Thomas **BROOKS**,
Plaintiff/Counterdefendant–Appellant,

v.

**UNITED STATES** of America,
Defendant/Counterplaintiff–
Appellee.

No. 94–1570.

United States Court of Appeals,
Seventh Circuit.

Submitted July 28, 1995.*

Decided Aug. 2, 1995 **.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record.

** The court has decided to publish this decision, originally an unpublished order under Circuit Rule 53.

Thomas Brooks (Submitted), Chicago, IL, pro se.

Brian R. Havey, Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for U.S.

Before FLAUM, RIPPLE, and KANNE, Circuit Judges.

PER CURIAM.

Thomas Brooks filed a suit in district court against the United States Department of Agriculture for judicial review of an administrative decision by the Department of Agriculture, Food and Nutrition Service ("FNS") to disqualify Brooks from participating in the Federal Food Stamp Program for three years.[1] The United States filed counterclaims under the False Claims Act, 31 U.S.C. § 3729, and under a common law theory of unjust enrichment. After a bench trial, the district court upheld the three year disqualification imposed by the FNS and awarded the United States treble damages in the amount of $215,500 against Brooks for violating the False Claims Act.[2] The United States' alternative claim for unjust enrichment was dismissed. This timely appeal followed.

### Procedural History

The FNS administers the Federal Food Stamp Program pursuant to the provisions of the Food Stamp Act, 7 U.S.C. §§ 2011, *et seq.*, and the regulations promulgated under that Act, 7 C.F.R. §§ 271, *et seq.* As part of the Food Stamp Program, the FNS licenses food stores to accept food stamps as payment for certain eligible food items.[3] Once the store owner obtains food stamps, he or she redeems the stamps at a bank or other financial institution for cash or credit in an amount equal to the face value of the food stamps. Using federal funds appropriated for the operation of the Food Stamp Program, the federal government credits the financial institution for the value of the coupons redeemed. With each redemption of food stamps, the Program participant is required to prepare and submit a deposit slip known as a food stamp redemption certificate, certifying that the food stamps were received in accordance with the Food Stamp Program regulations. A store that violates these regulations is subject to various penalties, including disqualification from the Program.

Brooks applied to participate in the Food Stamp Program in August of 1991, as the sole proprietor of Sir Bee's Food Mart ("Sir Bee's") in Chicago. In his application, Brooks estimated that Sir Bee's annual gross total sales would be $82,000 and that annual gross food sales would be $55,000. Brooks described Sir Bee's as a medium to small grocery. The FNS authorized Brooks to participate in the Program and mailed material pertaining to the Program to Sir Bee's. However, since Sir Bee's had not yet opened for business, this mailing was returned to the FNS by the postal service. The FNS was unable to reach Brooks by telephone and, accordingly, canceled his authorization.

In February of 1992, Brooks reapplied for participation in the Food Stamp Program, projecting annual gross total sales of $85,000 and annual gross food sales of $75,000. The FNS authorized Brooks' participation in the Program. Accordingly, Brooks began to submit food stamps and redemption certificates on a regular basis. Approximately three months after Brooks began participating in the Program, the FNS discovered that Brooks' food stamp redemptions were gross-

---

1. The United States points out that Brooks improperly named the United States Department of Agriculture as the defendant—the United States is the only proper defendant in an action for judicial review of a disqualification from the Food Stamp Program. 7 U.S.C. § 2023(a). Accordingly, the United States is substituted for the Department of Agriculture as the defendant-appellee in the instant appeal.

2. We note that as the result of a clerical error, the judgment provided that the United States was awarded $215,000 in damages. However, the opinion of the district court accompanying its final judgment makes clear that the United States was to be awarded $215,500 in damages against Brooks.

3. Eligible foods include "[a]ny food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption...." 7 C.F.R. § 271.2.

ly over the average for comparable establishments, and totaled over 90% of Brooks' projected annual food sales of $75,000. Over the next nine months, Brooks continued redeeming food stamps which greatly exceeded his projected annual food sales. Consequently, in February of 1993, the FNS sent Brooks a letter informing him that his food stamp redemptions exceeded his projected food sales. The letter stated that if Brooks' projected food sales did not accurately' reflect his actual food sales, Brooks would have to provide the FNS with supporting documentation (i.e., sales tax returns, and purchase invoices). The FNS also warned Brooks that without this supporting documentation, it would accept Brooks' projected annual food sales as Sir Bee's actual sales. Brooks responded that his food stamp redemptions did not exceed his food sales, but stated that he kept no receipts or invoices to document his sales.

Accordingly, in March of 1993, the FNS notified Brooks that it had reason to believe that Brooks had violated the terms and conditions of the regulations governing the Food Stamp Program by redeeming food stamps in excess of actual qualifying food sales. The FNS stated that from April of 1992 through January of 1993, Brooks redeemed a total of $232,256 in food stamps—$157,256 more than his projected annual food sales. The FNS informed Brooks that it was considering disqualifying him from the Food Stamp Program or imposing a civil monetary penalty. The FNS invited Brooks to respond to its charge. Brooks responded, indicating that he had no records that would confirm his actual food sales. Thereafter, the FNS disqualified Brooks from the Food Stamp Program for a period of three years and informed Brooks that it was making a claim for repayment in the amount of $157,256.

Brooks requested administrative review of the FNS' three year disqualification with the FNS' administrative review branch. However, Brooks again failed to include any documentation to support his claim that his food stamp redemptions did not exceed his food sales. Accordingly, the FNS' three year disqualification of Brooks from the Program was upheld. Subsequently, Brooks filed a complaint in the district court seeking review of his disqualification from the Food Stamp Program. The United States filed two counterclaims: one for treble damages under the False Claims Act for the amount his redemptions exceeded his actual food sales, and another for damages under a theory of unjust enrichment.

Following a bench trial, the district court found that Sir Bee's Food Stamp redemptions from April, 1992 through January, 1993 exceeded its actual food sales over that same period. Accordingly, the district court dismissed Brooks' complaint seeking reversal of the FNS' decision to disqualify Brooks from the Food Stamp Program. Likewise, the district court found Brooks in violation of the False Claims Act. In calculating damages under the False Claims Act, the district court found that the amount of food stamp redemptions reasonably obtainable by the store was at the rate redeemed in the early months of its operations (May, June and July of 1992)— an average of $16,042.33 per month. Accordingly, the district court found Sir Bee's food sales over the ten month period to be $160,423.30. The district court subsequently entered judgment in favor of the United States and against Brooks in the amount of $215,500 in treble damages under the False Claims Act (the difference between $232,256 and $160,423, times three). Because of its recovery under the False Claims Act, the government's counterclaim for unjust enrichment was dismissed. Brooks timely appealed the judgment of the district court.

### Issues

Brooks presents the following claims on appeal: (1) the government failed to sustain its burden of proving that Brooks violated the False Claims Act; (2) the FNS erred in disqualifying Brooks from the Food Stamp Program for three years; (3) the district court erred in denying Brooks' motion for a continuance of the trial; and (4) the district court's "many interruptions" of Brooks during his examination of various witnesses deprived Brooks of a fair trial.

### Discussion

 Brooks first argues that government failed to prove that he violated the

False Claims Act, 31 U.S.C. § 3729. Subsections 3729(a)(1) and (b) provide:

(a) **Liability for certain acts.**—Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

\* \* \* \* \* \*

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person. . . .

\* \* \* \* \* \*

(b) **Knowing and knowingly defined.**— For the purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information—

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

The United States is required to prove all essential elements of a claim for violation of the False Claims Act by a preponderance of the evidence. 31 U.S.C. § 3731(c). We review findings of fact under a clearly erroneous standard. *Keller v. United States,* 58 F.3d 1194, 1197 (7th Cir.1995). We review conclusions of law *de novo. Kraushaar v. Flanigan,* 45 F.3d 1040, 1052 (7th Cir.1995).

Since Brooks claimed that he did not retain any sales receipts or purchase invoices,

there was no evidence of the precise amount of his actual sales. Nonetheless, there was substantial evidence establishing that Brooks' food stamp redemptions exceeded his actual food sales.[4] Brooks projected $75,000 in annual food stamp eligible sales. Over a ten month period, he redeemed $232,256 in food stamps, more than three times this amount.[5] Loretta Mitchell, an FNS agent, testified that Brooks' food stamp redemptions grossly exceeded the average redemptions for similar grocery stores in Sir Bee's geographical area. Bohnumil Polcar, another FNS agent, testified that based on his visit to Sir Bee's and his experience with similar food stores (and the sales typically generated from these stores), it was not possible for Brooks to legitimately redeem $232,256 in food stamps over a ten month period. Although the district court found Polcar's visit to Sir Bee's too brief to establish the "particulars" of Sir Bee's layout and facilities, Polcar's assessment was supported by the testimony of Brooks' former bookkeeper, Duke Bingham.

Bingham testified that in the summer of 1993, he began working on state sales tax returns for sales from Sir Bee's from June of 1992 through July of 1993. However, because of Brooks' excessive sales figures, in conjunction with Brooks' failure to supply him with any sales receipts or purchase invoices supporting the sales figures he provided, Bingham terminated his relationship with Brooks. Bingham testified that Sir Bee's was, essentially, a fast food business with very little inventory in food stamp eligible items.[6] Bingham stated that based on his bookkeeping experiences with other food stores, Sir Bee's could not have supported the volume of food stamp redemptions claimed by Brooks.

---

4. Brooks claims that the government could have discovered his actual sales by asking Brooks' food suppliers for sales invoices documenting their food sales to Brooks. Brooks argues that the government intentionally failed to obtain this evidence because it knew it would prove that his food stamp redemptions did not exceed his food sales. First, Brooks does not indicate that his suppliers would have been able to supply this documentation—Brooks admits that his attempt to obtain purchasing information from his suppliers was unsuccessful. In any event, the evidence presented at trial was sufficient to demonstrate that Brooks' food stamp redemptions exceeded his actual food sales, notwithstanding the absence of this documentation.

5. In one month alone, January of 1993, Brooks' food stamp redemptions exceeded his projected annual food sales by $29,000.

6. Willie Benjamin, Brooks' landlord, also described Sir Bee's as a "fast food" operation.

This evidence supports a finding that Brooks' food stamp redemptions greatly exceeded his actual sales and, therefore, that Brooks knowingly filed false claims for food stamp redemptions. Based on the evidence presented at trial, the district court had sufficient grounds to find that, by a preponderance of the evidence, Brooks knowingly defrauded the federal government.[7]

 Brooks next maintains that since the FNS disqualified him before advising him of his violations of the Food Stamp Program and of the possible consequences of these violations, his three year disqualification was improper. A penalty imposed by the FNS for violations of the Food Stamp Program may be set aside only if it is arbitrary and capricious. *Carlson v. United States,* 879 F.2d 261, 263 (7th Cir.1989); *see also McGlory v. United States,* 763 F.2d 309, 311 (7th Cir.1985) (citing *Butz v. Glover Livestock Comm'n Co., Inc.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)). Section 2021(a) of the Food Stamp Act provides that any food store participating in the Federal Food Stamp Program may be disqualified, either temporarily or permanently, "on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter." 7 U.S.C. § 2021(a). A participating food store is subject to a three year disqualification when that store's food stamp redemptions for a specified period of time exceed its actual food sales for the same period of time if the store was not previously advised that it was violating the law. 7 C.F.R. § 278.6(e)(3)(ii). If the store was previously advised, it is subject to a five year disqualification. 7 C.F.R. § 278.6(e)(2)(ii). As mentioned above, Brooks' food stamp redemptions exceeded his actual food sales over the same period of time. Accordingly, although Brooks had no prior warning from the FNS, the FNS properly disqualified Brooks for three years.

 Brooks next claims that the district court erred in failing to grant his request for a continuance of the trial because (1) he did not have time to subpoena several witnesses to appear at trial; (2) he did not receive the government's answers to his interrogatories until December 2, 1993 (the day after the first day of trial); and (3) Duke Bingham failed to bring certain documents with him when he appeared to testify at trial on January 3, 1994. It is well-settled that "[d]istrict courts have wide discretion to control their docket by granting or denying motions to continue." *Mraovic v. Elgin, Joliet & Eastern Ry. Co.,* 897 F.2d 268, 270 (7th Cir.1990); *see also Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *United States v. Hall,* 35 F.3d 310, 315 (7th Cir.1994); *United States v. Stevenson,* 6 F.3d 1262, 1265 (7th Cir.1993). Hence, "[w]hen reviewing challenges for abuse of discretion in district court scheduling, we have concluded that '[m]atters of trial management are for the trial judge; we intervene only when it is apparent that the judge has acted unreasonably. The occasions for intervention are rare.'" *Mraovic,* 897 F.2d at 270–71 (quoting *Northern Indiana Pub. Serv. Co. v. Carbon County Coal Co.,* 799 F.2d 265, 269 (7th Cir.1986)).

On December 1, 1993, the first day of trial, Brooks presented an "emergency" motion requesting a 21–day continuance. Brooks claimed that he had not had time to subpoena Duke Bingham and Mary Livingstone (Livingstone was an employee at the bank where Brooks redeemed his food stamps), and that he had not yet received the government's answers to his first set of interrogatories. Although the district court allowed the government to put two of its witnesses on the stand to testify, Mitchell and Polcar (the FNS employees involved in the investigation of Brooks' food stamp redemptions), the district court then continued the trial to January 3, 1994 to allow Brooks to subpoena Bingham and Livingstone. The district court added that if Brooks felt it was necessary, he could request Mitchell and Polcar to testify again at a later date.

The district court's continuance allowed Brooks to present the testimony of both

---

7. Since Brooks does not challenge the district court's calculation of damages under the False Claims Act, we will not review the district court's award of damages.

Bingham and Livingstone. Moreover, Brooks does not indicate that he was prejudiced by the government's presentation of Mitchell and Polcar as witnesses before he received the government's answers to Brooks' first set of interrogatories.[8] The district court's actions in response to Brooks' request for a continuance did not constitute an abuse of discretion.[9]

■ Brooks next claims that he was denied a "fair trial" by the trial judge's interruptions during Brooks' examination of various witnesses. Brooks claims that these interruptions disrupted his train of thought and caused him to refrain from asking certain questions of the witnesses he was examining. We find that none of the judge's comments referred to by Brooks were inappropriate or unfairly prejudiced Brooks.

■ Finally, in his reply brief Brooks raises two new issues: (1) that the government failed to produce all documents asked for by Brooks in his first request for production of documents; and (2) the government's main witness, Loretta Mitchell, committed perjury. Since these issues were raised for the first time in his reply brief, they have been waived. *Graff v. City of Chicago*, 9 F.3d 1309, 1318 n. 6 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994).

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

8. We note that Brooks' late receipt of the answers to the government's interrogatories was, at least in part, his own fault. Although Brooks sent the interrogatories to the government on October 18, 1993, the government never received them. Brooks was informed of this on November 17. Instead of promptly sending the government a second set of interrogatories, Brooks waited until November 30, 1993, two days before trial, to do so.

9. Brooks also claims that the district court erred in failing to continue the trial on January 3, 1993, when Bingham, whom Brooks had subpoenaed to testify, failed to bring certain documents (as requested by Brooks) with him to trial. There is no indication in the record, however, that Brooks ever requested a continuance. Moreover, Bingham testified that he was no longer in possession of the documents requested by Brooks.