**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ismael CORONADO–NAVARRO,
Defendant–Appellant.**

No. 96–3345.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1997.
Decided Oct. 20, 1997.

---

Christina McKee (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Steven J. Riggs (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Defendant–Appellant.

Before CUMMINGS, KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Ismael Coronado–Navarro was charged with being an alien present in the United States after prior deportation, in violation of 8 U.S.C. § 1326. He was convicted after a bench trial and sentenced to twenty-four months imprisonment. Although the circumstances that led to this conviction can only be described as tragic, this is a simple case of waiver, and we must affirm the judgment of the district court.

## I.

Ismael Coronado–Navarro ("Coronado") entered the United States illegally in 1984 at the age of sixteen. He settled in Goshen, Indiana, where he held a variety of jobs. He married, divorced, and married again, having children for the first time with his second wife. During his time in Indiana, Coronado committed a number of motor vehicle violations, including several for driving while intoxicated, and some for driving without a license or insurance. He was ultimately convicted under Indiana's Habitual Traffic Offender law, and sentenced to eighteen months imprisonment. The court suspended all but six months of his sentence, and during those six months in prison, the INS came to question him. The INS determined that Coronado had entered the United States without documentation, and that his wife had contacted the INS in Lincoln, Nebraska in an attempt to petition for legal status for her husband. At the time, Coronado had one child, and his wife was pregnant with their second child. When he finished serving his sentence, he was transferred from the Indiana Department of Corrections to an INS detention facility in Chicago, and then to an INS facility near Brownsville, Texas.

Shortly thereafter, Coronado appeared for a deportation hearing before an administrative law judge at the INS' Los Fresnos Processing Center near Brownsville. Although that proceeding is not part of the record, both parties submitted portions of the transcript to this Court. At the hearing, after telling the ALJ that he did not wish to wait to have counsel appointed and yet did not wish to go forward representing himself, Coronado insisted repeatedly that "I want my deportation." Ultimately, the ALJ ordered that he be deported. Apparently, Coronado's wife was then days away from giving birth to their second child and Coronado had decided that the most expedient way to return to his wife in Indiana was to submit to deportation, and then come back into the United States as quickly as possible. The parties dispute whether Coronado believed he could legally reenter the United States after being deported, but in any case, that is exactly what he did, arriving in Goshen a few days after the birth of his second child. He was arrested shortly thereafter because he had failed to report to his probation officer upon being released from prison. While serving additional time for the probation violation, Coronado was charged with violating 8 U.S.C. § 1326.

The district court set a trial date, and Coronado's attorney moved to continue the date for several weeks in order to have time to file a "pretrial motion to challenge the deportation of Mr. Coronado [which] may be the only plausible defense to the present charge." Record on Appeal 21, at p. 3. The court accommodated the request by continuing the trial date, and issuing an order setting a briefing schedule: "Counsel for the Defendant indicated that he intends to move to dismiss this indictment through a collater-

al attack on the deportation hearing alleged in it. In order to keep this case on track for the recently rescheduled trial date, the following briefing schedule is set." Record on Appeal 23, at p. 1. On the date set for defendant to file his motion to dismiss, Coronado filed nothing with the court. In fact, Coronado's attorney did not raise the issue of the collateral attack on the deportation proceeding again until the morning of trial. At that time, in the context of a discussion regarding Coronado's waiver of a jury trial, Coronado's attorney indicated that Coronado was waiving his right to a jury trial because he intended to challenge only whether the government could prove beyond a reasonable doubt that Coronado was lawfully deported:

> My research of the case law, which I conveyed to Mr. Coronado both in English and in Spanish, was that that's a legal question and should either be brought by pretrial motion or other cases said it could just be tried to the Court. And so it's not our defense, so to speak, is not a matter that could be properly raised before the jury in any event.
>
> I discussed this with Mr. Coronado over the last six weeks. When we decided not to file a pretrial motion, basically duplicate the trial, we believed it would be in his best interest to waive the jury. And that's why we're here today, and I fully discussed that with him.

Transcript of Proceedings at Trial before the Honorable John D. Tinder, at p. 10. At this point, the court accepted Coronado's waiver as voluntary and knowing. Neither the court nor the government addressed at that time whether Coronado had possibly waived his collateral attack on the deportation by failing to file a pre-trial motion.

Moments later, the trial began. The government stated in opening argument that Coronado had waived his collateral attack on the deportation hearing. Coronado again explained in opening that he intended to challenge whether the government could prove as an element of its case that Coronado had been lawfully deported. Again, the court did not comment on the possible waiver. The government first called Michael Reeves, a special agent with the United States Depart-

ment of Justice, Immigration and Naturalization Service. During cross-examination of Agent Reeves, Coronado sought to introduce into evidence an audio tape of the deportation hearing. The government objected on the grounds that Coronado had waived any legal challenge to the deportation proceeding by not raising it in a pretrial motion as directed by the court. The court deferred ruling on the waiver, and allowed admission of the tape for the limited purpose of impeaching Agent Reeves. Coronado proceeded to question Reeves about the deportation hearing. At the end of questioning, the court sustained the government's objection to the admission of the tape:

> The objection is sustained in that to the extent that the utilization of this is intended to question the validity of the procedures used at the deportation proceeding, the trial was originally continued on the defendant's request for the very purpose of allowing a pretrial challenge to the deportation proceeding, which would have given the Government an opportunity to see what the challenge was and to meet that challenge.
>
> It would be unfair at this point in time, now that jeopardy has attached, to allow the initiation of that collateral attack on the deportation proceeding and put the Government in a position where they don't know what the attack was until jeopardy has already attached and not have an opportunity to adequately prepare to meet that attack that they would have through the briefing procedure that I had set forth.
>
> I think the Government fairly could have relied upon the fact that there was a waiver of that potential attack because of no motion to dismiss being filed within the time frame as indicated in the briefing schedule. No objection was made to that schedule. No request for enlarging it was made. And so that issue was to have been raised prior to trial and it would be waived as of this point for not having been made further.

Transcript of Proceedings at Trial, at pp. 50–51. The defense called only one witness, Coronado himself, and the court sustained the government's objections to questions re-

lating to the deportation hearing. The court found that the government proved its case beyond a reasonable doubt, and sentenced Coronado to twenty-four months imprisonment.

## II.

■ On appeal, Coronado claims that his deportation occurred without the assistance of counsel, and that the deportation cannot, therefore, be used to prove an element of the government's case. He also argues that the district court's refusal to allow him to collaterally attack the deportation proceeding at trial rendered the trial fundamentally unfair. The government responds that Coronado waived any collateral attack on the deportation hearing by failing to raise it in a pretrial motion in the time allotted by the district court.

■ There is some confusion between the parties over what standard of review applies to the district court's refusal to entertain the collateral attack on the deportation hearing. The government contends that the collateral attack must take the form of a motion brought before trial pursuant to Federal Rule of Criminal Procedure 12(b)(2), and urges an abuse of discretion standard, citing *United States v. Weaver,* 882 F.2d 1128, 1135–36 (7th Cir.1989), *cert. denied,* 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989) (district court's ruling regarding whether a defendant has shown cause for failure to file a timely notice of intent to call an expert witness under Fed.R.Crim.P. 12.2(b) is reviewed only for abuse of discretion). *See also United States v. Simone,* 931 F.2d 1186 (7th Cir.1991), *cert. denied,* 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991) (failure to raise defects in indictment before trial constitutes waiver, and appellate court addresses a waived claim only where cause is shown justifying the granting of relief form waiver; if cause is shown, the claim is evaluated under the plain error standard). Perhaps to cover all the bases, the government also claims the abuse of discretion standard is proper because of the district court's discretion in the timing and scheduling of criminal trials. *See*

*United States v. Martinson,* 37 F.3d 353, 355 (7th Cir.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1256, 131 L.Ed.2d 136 (1995) (the grant or denial of a motion to reschedule a trial is reviewed for abuse of discretion; the party claiming abuse of discretion must show that the decision was arbitrary and that it caused actual prejudice).

Federal Rule of Criminal Procedure 12(b) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge." The rule lists several motions that must be raised prior to trial including: 1) defenses and objections based on defects in the institution of the proceedings; 2) defenses and objections based on defects in the indictment or information (except for certain jurisdictional defects, which can be raised at any time); 3) motions to suppress evidence; 4) requests for discovery under Rule 16; and 5) requests for a severance under Rule 14. When the district court set the briefing schedule here, it framed Coronado's collateral attack as a challenge to the indictment, presumably under Rule 12(b)(2). A motion to dismiss based on a defect in the indictment is the procedural device that some defendants have used to raise collateral attacks on the deportation proceeding. *See e.g., United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (defendant moved to dismiss indictment under 8 U.S.C. § 1326 on ground that prior deportation proceeding was fundamentally unfair); *United States v. Espinoza–Farlo,* 34 F.3d 469, 470 (7th Cir.1994) (same). Coronado implicitly argues that a collateral attack on a deportation hearing is not a defense based on a defect in the indictment. Rather, he contends, without citation to any authority, that it was a defense he could raise either before or during trial. We need not decide if such a challenge must be made pre-trial pursuant to Rule 12(b)(2) because, here, the district court specifically ordered that the collateral attack was to be made via a pretrial motion under a set briefing schedule.[1]

---

1. One district court ruled that a collateral attack on a deportation proceeding should be raised by

way of a pre-trial motion to dismiss the indictment. *United States v. McCalla,* 821 F.Supp.

Thus, even if Rule 12(b)(2) did not require that the collateral attack be raised in a pretrial motion, the district court required it by order.

Coronado characterizes the district court's ruling as a refusal to allow him to collaterally attack the deportation hearing at all, and thus implies the district court committed an error of law. Although he makes no explicit statement regarding the standard of review for decisions as a matter of law, we have no doubt he would argue that *de novo* review applies. However, the record clearly indicates that the district court was fully prepared to allow Coronado to collaterally attack the underlying deportation proceeding, and thus committed no error of law. In fact, the court set a briefing schedule so that Coronado could move to dismiss the indictment. Having set that briefing schedule, the court was merely enforcing strict compliance with its scheduling order when it refused to allow Coronado to raise the issue at trial. We therefore review for abuse of discretion the district court's denial on the grounds of untimeliness of Coronado's challenge to the deportation proceeding. *United States v. Reed,* 2 F.3d 1441, 1447 (7th Cir.1993), *cert. denied,* 510 U.S. 1079, 114 S.Ct. 898, 127 L.Ed.2d 90 (1994).

In *Reed,* the district court issued a pretrial order setting out discovery guidelines, and requiring any discovery motion to be filed by a certain date and to be supported by a brief. The defendant filed his discovery motion thirty-five days late, nine days before trial, and without a supporting brief. We held that the district court's refusal to entertain the untimely discovery motion was not an abuse of discretion: "District court judges, because of the very nature of the duties and responsibilities accompanying their position, possess great authority to manage their caseload." *Reed,* 2 F.3d at 1447. *See also Brooks v. United States,* 64 F.3d 251, 256–57 (7th Cir.1995) (when re-viewing challenges for abuse of discretion in district court scheduling, matters of trial management are for the district judge and we intervene only when it is apparent the judge has acted unreasonably); *Martinson,* 37 F.3d at 355 (to establish that district court abused its discretion in scheduling matter, defendant must show that the decision was arbitrary and caused him actual prejudice); *United States v. Hamm,* 786 F.2d 804, 806–07 (7th Cir.1986) ("[a] trial court has discretion when considering an untimely motion and a reviewing court may disturb the trial court's decision only for clear error."). In *Reed,* as here, the defendant offered no reason for the untimeliness. The court had given the parties adequate notice and set reasonable deadlines for the filing of motions. In those circumstances, we found there was no abuse of discretion.

Nor has Coronado offered any reason for failing to file the motion in the time frame ordered by the court. He expresses only his mistaken belief that he was free to ignore the court's order and raise the issue any time he wished. The court was certainly justified in enforcing its order in these circumstances, especially because the parties agree that Coronado's challenge was purely legal and thus particularly well-suited for disposition via a pretrial motion. *See Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. at 2156. Resolution of this issue could well have spared the parties a trial. If the court had ruled in Coronado's favor, it would have dismissed the indictment. If the court had ruled against Coronado, he may well have pled guilty given his attorney's revelation that this was his only defense. The court was certainly not obliged to delay or halt the trial in order to allow Coronado to raise an issue the court had ordered be raised in a pre-trial motion. The court was within its discretion to enforce its briefing schedule.[2]

Coronado attempts to get around this simple waiver by characterizing the collateral

---

363, 367 (E.D.Pa.1993), *aff'd. on other grounds,* 38 F.3d 675 (3d Cir.1994), *cert. denied,* 514 U.S. 1112, 115 S.Ct. 1968, 131 L.Ed.2d 857 (1995). No other court of which we are aware has addressed the proper procedural device for raising the challenge, and we need not decide that issue today.

**2.** Coronado takes issue with the district court's statement that the government would be prejudiced by having to address this issue once jeopardy attached. Because Coronado made his intent to raise this defense at trial clear before the trial began, he argues, prejudice to the government is an improper factor to consider. Even without prejudice to the government, however, the court

attack not as a defense but as a challenge to an element of the government's case. Evidence about the deportation proceeding would show that the government could not prove beyond a reasonable doubt that there was a valid deportation, he contends. This is really the same argument from a slightly different angle. Whether raised as a defense or as a challenge to the government's case in chief, the court ruled that Coronado was to brief the issue in a pre-trial motion, and he failed to do so. The court did not abuse its discretion in refusing to allow Coronado to raise this issue in any form at trial. The court was simply enforcing its order so that the trial could proceed on schedule, and in an orderly and efficient manner. Because Coronado received adequate notice and sufficient time to address the issue, we find that the trial court's refusal to allow Coronado to belatedly raise the issue at trial was not an abuse of discretion.

AFFIRMED.

was entitled to enforce the briefing schedule in order to control its busy trial calendar.