In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-4199

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RASHID A. SALAHUDDIN,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 145—**Rudolph T. Randa,** *Chief Judge*.

———————

ARGUED SEPTEMBER 17, 2007—DECIDED DECEMBER 19, 2007

———————

Before FLAUM, RIPPLE and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Rashid A. Salahuddin was in-
dicted on June 7, 2005, on one count of being a felon in
possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).
After a jury found him guilty of the charge, he was sen-
tenced to 180 months in prison according to the armed
career criminal provisions of 18 U.S.C. § 924(e).[1] He now

———————

[1] The jurisdiction of the district court was premised on 18 U.S.C.
§ 3231; 28 U.S.C. § 1331.

appeals his conviction by jury and his sentence.[2] For the reasons set forth in this opinion, we vacate the judgment of the district court and remand the case for further proceedings.

# I

## BACKGROUND

On January 13, 2003, Milwaukee County Sheriff's detectives sought Mr. Salahuddin on an outstanding escape warrant.[3] Mr. Salahuddin's wife gave the detectives consent to search the couple's apartment,[4] where they found two firearms in a bedroom closet. The next day, the detectives arrested Mr. Salahuddin after they saw him enter the apartment. When asked whether there were any firearms in the apartment, Mr. Salahuddin indicated that there were two rifles belonging to his wife in the bedroom closet.

Mr. Salahuddin was indicted on June 7, 2005, on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On September 2, he began to plead guilty, but he changed his mind during the plea hearing when he was told that the plea meant giving up

---

[2] We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[3] Mr. Salahuddin had failed to return to the corrections facility while on work release.

[4] Mr. Salahuddin disputed whether his wife gave consent to search in his motion to suppress. The district court denied the motion as untimely. We discuss this disposition at length in this opinion.

his right to attempt to suppress evidence that the Government had obtained. However, Mr. Salahuddin again changed his mind, and, on September 7, five days before his scheduled trial, he entered a plea of guilty. The district court scheduled a sentencing hearing for December 7.

Shortly before the sentencing hearing, the parties moved for a postponement in sentencing in order to permit them to investigate whether Mr. Salahuddin should be treated as an armed career criminal under 18 U.S.C. § 924(e), on the ground that his juvenile conviction for armed robbery actually had involved a number of victims at different locations. The district court granted the postponement. On December 28, the court received a presentence report ("PSR") that recommended that Mr. Salahuddin be treated as an armed career criminal.

On January 6, 2006, Mr. Salahuddin's retained counsel moved for, and was granted, leave to withdraw. On January 23, his new counsel moved to withdraw the guilty plea. Counsel pointed out to the court that the guilty plea was entered because the Government had represented to prior counsel that it did not believe that Mr. Salahuddin qualified as an armed career criminal. On February 28, the district court granted the motion to withdraw the guilty plea.[5] The district judge who had granted the motion then recused himself, and the case

---

[5] Mr. Salahuddin also contended that his motion to withdraw the guilty plea should be granted because his original counsel was inexperienced in federal law and did not recognize the unique facts of Mr. Salahuddin's criminal history that qualified him as an armed career criminal and because Mr. Salahuddin evidenced concern about the possibility that he could be so sentenced.

was transferred to the docket of another district judge sitting in the same district. Trial was scheduled for May 18.

On March 27, 2006, Mr. Salahuddin filed pretrial motions to suppress evidence and statements. These motions were untimely because the district court had set July 7, 2005 as the date for the filing of such motions. On April 5, 2006, the magistrate judge to whom these motions were assigned nevertheless ruled that the motion ought to be entertained and that an evidentiary hearing ought to be conducted. He believed that the delay in filing the motion was due in part to the "uncertainty regarding the applicability of the armed career criminal enhancement." R.39 at 3. The judge further took into consideration that Mr. Salahuddin had new counsel and that it appeared that there were significant factual issues that needed to be decided at an evidentiary hearing.

On May 3, the district judge reviewed and reversed the decision of the magistrate judge. The district judge, in a two-paragraph order, simply stated that, after a review of the briefs, he had concluded that the "good cause" requirement that permits the filing of such motions after the deadline had not been met. R.49. On August 15, 2006, Mr. Salahuddin was convicted by jury and, on November 21, 2006, was sentenced to 180 months of incarceration. On November 29, 2006, he filed a timely appeal.

## II

## DISCUSSION

### A.

A motion to suppress evidence must be filed prior to trial. Fed. R. Crim. P. 12(b)(3)(C); *United States v. Mancillas*,

183 F.3d 682, 703 (7th Cir. 1999). A party "waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets." Fed. R. Crim. P. 12(e). However, the district court may, for good cause, "grant relief from the waiver."[6] *Id.*; *see also United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir. 2005).

We review for clear error the district court's discretionary decision not to review an untimely pre-trial motion. *United States v. Hamm*, 786 F.2d 804, 806 (7th Cir. 1986). We approach a district court's ruling on whether to permit an untimely motion to suppress with great deference to the judgment of the district court. "District judges, because of the very nature of their duties and responsibilities accompanying their position, possess great authority to manage their caseload." *United States v. Coronado-Navarro*, 128 F.3d 568, 572 (7th Cir. 1997) (quoting *United States v. Reed*, 2 F.3d 1441, 1447 (7th Cir. 1993)); *see also Brooks v. United States*, 64 F.3d 251, 256-57 (7th Cir. 1995) (noting that matters of trial management are for the district judge).

A plea agreement was filed in this case on September 2, 2005. This document was the first filing in the case. On the date of that filing, Mr. Salahuddin appeared before the district court to enter a plea of guilty. That attempt failed when the district court explained to him that the entry of any plea would waive his right to raise any claim that the Government had obtained evidence through an illegal search. Nevertheless, several days later, on September 7,

---

[6] We have construed the term "waiver" under Rule 12(e) as constituting a forfeiture that does not preclude appellate review. *United States v. Davenport*, 986 F.2d 1047, 1048 (7th Cir. 1993).

Mr. Salahuddin appeared again before the court and entered a guilty plea.

On the day before sentencing was to take place, the parties jointly requested a postponement in order to determine whether Mr. Salahuddin was subject to the armed career criminal provisions of 18 U.S.C. § 924(e). Several weeks later, the parties informed the court of the applicability of the provisions and that Mr. Salahuddin was considering asking that he be permitted to withdraw his guilty plea. At this point, the district court appointed new counsel for him. On January 23, several weeks later, Mr. Salahuddin, with new counsel, filed a motion to withdraw his plea. On February 28, 2006, the district court, noting "particularly the facts and circumstances surrounding the defendant's plea in this case," allowed Mr. Salahuddin to withdraw his plea and recused itself from further proceedings. It is against this background that the magistrate judge permitted the late filing of the motion to suppress.[7]

The issue of whether the defendant should have been permitted to file his motion to suppress comes to us in a considerably more complex context than the one in which such motions usually appear. On the one hand, it does not appear, and we do not understand counsel to argue, that the delay in filing the motion to suppress can

---

[7] The magistrate judge did not specifically determine that Mr. Salahuddin had shown good cause for his delay. Instead, the magistrate described the determination that the court should address the motions to suppress as one made "in the interests of justice." Because we believe that there was good cause to address the motions, the magistrate's articulation of an imprecise standard was harmless.

be laid exclusively at the feet of the Government. Nor can we say with any assurance that the delay in filing the motion was due to counsel's "negligence, oversight, or laziness." *United States v. Chavez*, 902 F.2d 259, 263 (4th Cir. 1990). We certainly cannot say that this motion was simply based on Mr. Salahuddin's "mistaken belief that he was free to ignore the court's order and raise the issue any time he wished." *Coronado-Navarro,* 128 F.3d at 572. Rather, it appears that, here, the failure to file was due in large part to a mutual misapprehension by both the Government and the defense as to the facts underlying Mr. Salahuddin's juvenile conviction and whether these factual circumstances permitted that offense to be counted as multiple prior offenses. The ambiguity—and complexity—of the situation is compounded by the fact that the district court, albeit with a different district judge presiding, had determined previously that Mr. Salahuddin ought to be permitted to withdraw his guilty plea. In determining that earlier motion, the issue of confusion over the appropriate treatment of the juvenile conviction had played a significant part. The correctness of that ruling is not before us.

The magistrate judge's initial determination that the suppression motion should be entertained was rooted in the practicalities of the situation. It seems incongruous to permit a defendant to withdraw a guilty plea and go to trial while not permitting him to litigate the admissibility of significant evidence. It is true that the considerations governing such a motion are different in every case and rarely all favor one side. With respect to this suppression motion, Mr. Salahuddin no doubt knew of the factual disputes that would require an evidentiary hearing well before the filing deadline for motions to suppress. On

the other hand, although the uncertainty over the applicability of the armed career criminal provisions did not preclude his filing a suppression motion, there was definitely a practical relationship between the uncertainty about the statute and the decision not to file. That practical relationship cannot be ignored. Certainly, once Mr. Salahuddin was permitted to withdraw his plea and go to trial, it made sense to permit him to litigate the suppression motion.

Moreover, it is not clear that, under these circumstances, permitting the defendant an opportunity to test whether the key evidence against him is admissible, after he withdrew a guilty plea, controverts the purpose of Rule 12(e). Here, neither the speed and efficiency of the judicial process nor fairness to the Government appears to be at stake. The pretrial motions requirement embodied in Rule 12 serves "an important social policy and not a narrow, finicky procedural requirement," *Jones v. United States*, 362 U.S. 257, 264 (1960), overruled on other grounds, *United States v. Salvucci*, 488 U.S. 83, 95 (1980), and these goals would not be jeopardized by granting a hearing on the motion to suppress in these unique circumstances. Mr. Salahuddin's motion, although untimely under the schedule originally set by the district court, would not have postponed the trial schedule. After the magistrate judge granted the motion for a hearing on the motion to suppress, he reset the trial date. Therefore, at the time the district court refused to hold a suppression hearing, the trial was scheduled for three months in the future.[8]

---

[8] On April 5, when the magistrate judge granted the untimely motion for a suppression hearing, the trial was set for May 15.

(continued...)

Furthermore, Mr. Salahuddin filed a waiver of his rights under the Speedy Trial Act, 18 U.S.C. § 3161. Notably, the Government makes no argument that it would have been prejudiced by permitting Mr. Salahuddin to receive a ruling on his suppression motion. If the district court had heard the motion and suppressed the evidence, the Government could have appealed that suppression, *see* 18 U.S.C. § 3731,[9] because the jury was not yet sworn and jeopardy had not attached. *Cf. United States v. Centracchio*, 236 F.3d 812, 813-14 (7th Cir. 2001) (alluding to a concern that the Government may not appeal a suppression determination once jeopardy attaches). In this situation, permitting the defendant to pursue his suppression motion does not implicate the social costs associated with granting a motion to suppress that is raised after a jury has been sworn or that is raised for the first time on appeal. *Cf. United States v. Chavez-Valencia*, 116 F.3d 127, 131-33 (5th Cir. 1997) (detailing the social costs that arise when an untimely motion is entertained after the jury is empaneled or when the matter is raised for the first time on appeal).

---

[8] (...continued)
The magistrate judge set the hearing for May 18 and, on April 11, rescheduled the trial from May 15 to August 14. Thus, on May 3, when the district court reversed the magistrate judge, the trial was set for August 14; that is, three months in the future.

[9] This statute provides: "An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict." 18 U.S.C. § 3731.

Given these unique circumstances—especially the mutual misapprehension of the Government and the defense about the applicability of the armed career criminal provisions, and the consequent granting of a new trial by the district court—and the district court's failure to express *any* countervailing consideration, we must conclude that the district court should have given Mr. Salahuddin an opportunity to present and to litigate his suppression motion.

**B.**

Mr. Salahuddin also suggests, apparently to preserve the argument for possible review by the Supreme Court, that the armed career criminal provisions of 18 U.S.C. § 924(e) increased his sentence in violation of the Fifth and Sixth Amendments. The armed career criminal provisions permit a judge to increase a defendant's sentence based on prior convictions, without putting those convictions before a jury and requiring the jury to find them beyond a reasonable doubt. Mr. Salahuddin contends that, according to the Supreme Court's interpretation in *United States v. Booker*, 543 U.S. 220 (2005), the provisions conflict with the Constitution.

A prior conviction need not be put to a jury before it may be used to enhance a defendant's sentence. *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998); *see also Shepard v. United States*, 544 U.S. 13, 25-26 (2005). Mr. Salahuddin acknowledges our holdings that the "prior conviction" exception is good law. *See, e.g., United States v. Wilburn*, 473 F.3d 742, 745-46 (7th Cir. 2007); *United States v. Browning*, 436 F.3d 780, 781-82 (7th Cir. 2006). He further acknowledges that, although we have stated

previously that the prior conviction exception is "vulnerable to being overruled" by *Booker*, the issue is not for us, but the Supreme Court, to decide. *Browning*, 436 F.3d at 482. The Supreme Court has not overruled *Almendarez-Torres*. Therefore, we must reject Mr. Salahuddin's claim that the jury should have found his prior convictions beyond a reasonable doubt.

### C.

Finally, Mr. Salahuddin challenges the use of his armed robbery offenses, committed while he was a juvenile, to increase his sentence under the armed career criminal provisions of 18 U.S.C. § 924(e). Mr. Salahuddin submits that, in light of *Roper v. Simmons*, 543 U.S. 551 (2005), the armed career criminal provisions violate the Eighth Amendment because they permit a sentence increase based on crimes that the defendant committed as a juvenile. We cannot accept this contention.

Mr. Salahuddin contends that *Roper* prohibits increasing a sentence under the armed career criminal provisions for conduct that occurred when the offender was a juvenile but for which he was waived into adult court and there convicted. That contention is without merit. *United States v. Wilks*, 464 F.3d 1240, 1243 (11th Cir. 2006). *Roper* held that executing a person for conduct that occurred before the offender was eighteen violates the Eighth Amendment, but it permitted imposing a sentence of life imprisonment based on conduct that occurred when the offender was a juvenile. 543 U.S. at 560. *Roper* did not specifically or even tangentially address increasing a sentence to imprisonment on the basis of juvenile crimes or convictions. *Wilks*, 464 F.3d at 1243. The Court's

reasoning in *Roper* was based "in large measure on the 'special force' with which the Eighth Amendment applies when the state imposes the ultimate punishment of death." *United States v. Mays*, 466 F.3d 335, 340 (5th Cir. 2006) (citing *Roper*, 543 U.S. at 568-69). The reasoning in *Roper* therefore applies "with only limited, if any, force outside of the context of capital punishment." *United States v. Feemster*, 483 F.3d 583, 588 (8th Cir. 2007).

Our previous decisions, the case law of the Supreme Court and our sister circuits all support the district court's use of the convictions in question. We have affirmed a sentence that was increased under the armed career criminal provisions by conduct that occurred when the offender was a juvenile. *Wilburn*, 473 F.3d at 746. *Roper* itself affirmed that a person may be sentenced to life imprisonment for his juvenile conduct. 543 U.S. at 560, 578-79. Additionally, our sister circuits that have addressed whether conduct that occurred when the offender was a juvenile may increase a sentence issue in light of *Roper* have uniformly concluded that the increase does not violate the Eighth Amendment. *See, e.g.*, *Feemster*, 483 F.3d at 587 (holding *Roper* does not prohibit using juvenile conduct to enhance a sentence under the Sentencing Guidelines); *Mays*, 466 F.3d at 339-40 (same); *Wilks*, 464 F.3d at 1243 (holding that juvenile conduct may be used to increase a sentence under the armed career criminal provisions).

Forbidding the execution of a youthful offender is an entirely different proposition than increasing the sentence of an adult offender on the basis of conduct that occurred when the offender was a juvenile. *Wilks*, 464 F.3d at 1243. We therefore hold that the Eighth Amendment does not prohibit using a conviction based on juvenile conduct to

increase a sentence under the armed career criminal provisions.

### Conclusion

Accordingly, we must vacate the judgment of the district court and remand the case for further proceedings. On remand, the district court must permit the defendant to litigate his suppression motion. If the district court grants the motion, it must grant the defendant a new trial in order to permit a jury to determine the question of guilt or innocence in the absence of the suppressed evidence. If the court denies the motion to suppress, it shall reinstate its judgment, and Mr. Salahuddin may seek, if he wishes, further review in this court.

VACATED and REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*