# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2042
_____

United States of America

*Plaintiff - Appellee*

v.

Jerris M. Blanks

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: December 17, 2020
Filed: February 1, 2021
_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Jerris Blanks was convicted of three counts related to the receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2), (a)(5)(B), (b)(1), and (b)(2) and was sentenced to 130 months' imprisonment. Blanks argues

that the district court[1] abused its discretion in denying him leave to re-file pretrial motions and in admitting certain evidence. We affirm.

## I. Background

Law enforcement officers found more than 1,000 images of child pornography and child erotica and fourteen videos of child pornography on Blanks's devices and online accounts. The internet search history on Blanks's cellphone indicated that he had also accessed online images of child pornography and child erotica. Upon being charged, Blanks moved to dismiss the indictment. He also moved to suppress evidence seized from his online accounts and obtained pursuant to a search warrant.

Blanks and the Government reached a pre-ruling non-binding plea agreement, which required that Blanks withdraw all previously filed motions and waive his right to file any further pretrial motions. During a hearing before a magistrate judge,[2] Blanks confirmed that he wished to withdraw his motions and waive his right to file further motions. After rejecting the plea agreement, the district court, as set forth above, denied Blanks's motion to re-file pretrial motions.

Blanks stipulated at trial that the seized images contained child pornography and moved that the images not be shown to the jury because they were not probative and were also unfairly prejudicial. The government responded that it intended to show the jury only forty-two images. The court denied Blanks's motion to exclude the evidence, concluding that this percentage of images was less than that normally

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

[2]The Honorable Nannette A. Baker, United States Magistrate Judge for the Eastern District of Missouri.

shown in child pornography trials.  Forty-two images were shown to the jury, but no videos were presented.

## II. Discussion

We review for abuse of discretion the district court's denial of leave to file untimely pretrial motions, as well as its evidentiary rulings.  United States v. Trancheff, 633 F.3d 696, 697–98 (8th Cir. 2011).

## A. Pretrial Motions

Blanks first argues that the district court abused its discretion when it denied him leave to re-file his pretrial motions after rejecting his plea agreement.  It is undisputed that the deadline for pretrial motions had already passed when Blanks withdrew his pretrial motions and waived his right to file further motions.

Federal Rule of Criminal Procedure 12(c)(1) permits the court to "set a deadline for the parties to make pretrial motions."  The court may extend or reset filing deadlines, but will not consider an untimely motion unless the party shows good cause for the delay.  Id. 12(c)(2), (c)(3).  Good cause "requires a showing of cause and prejudice."  United States v. Fry, 792 F.3d 884, 888 (8th Cir. 2015).

We conclude that the district court did not abuse its discretion in denying Blanks's motion for leave to file post-deadline pretrial motions in light of his knowing and voluntary waiver of his right to do so.  See United States v. Bloate, 534 F.3d 893, 901 (8th Cir. 2008) (concluding that a party cannot show good cause exists when he knowingly and voluntarily waived his right to file), rev'd in part on other grounds, 559 U.S. 196 (2010).  The magistrate judge expressly asked Blanks at the motions hearing, "And do you understand that if I accept your withdrawal of motions and waiver of motions that you will not have another opportunity to bring up pretrial

motions in this case?"  See id. at 900 (describing the magistrate judge as having "expressly explained the nature and consequences of a waiver in detail").  Blanks responded, "I wasn't quite sure about that because . . . if the next judge was to for some reason deny our [plea] agreement, then where would that put us?"  The following dialogue ensued:

> THE COURT: Well, if you waive your right to have pretrial motions and I accept your waiver of pretrial motions, your case will be going before a district judge for a change of plea or a trial.  That would be the next step in the proceedings. . . .
>
> [THE GOVERNMENT]: I just want to make sure the record is clear is [sic] that we had negotiations—our negotiations are a non-binding plea agreement, and so the judge is free to either accept the recommendation or reject it.
>
> THE COURT: Okay.  So that's the situation.  So if you are going forward to the district judge, . . . I'm not involved in that part of the case.  What I would be involved in is whether or not you wish to file pretrial motions or have an evidentiary hearing on those motions.  But if I'm accepting your withdrawal of motions and waiver of motions then you would not be able to come back before this court and bring up pretrial motions again.  Do you understand that?
>
> [BLANKS]: Yes.
>
> THE COURT: Is that something that you wish to do?
>
> \*\*\*
>
> [BLANKS]: Yes.

The record is unambiguous.  The magistrate judge warned Blanks that the district court might reject the plea agreement and that, in those circumstances, Blanks would not be permitted to re-file his pretrial motions.  See id. at 901 ("[The

-4-

defendant's] waiver was knowing and voluntary, due to the magistrate judge's explanation of the right and its consequences."). Blanks acknowledged that he understood that risk and decided to withdraw his motions and waive his right to re-file. On this record, it is clear that Blanks "voluntarily and knowingly agreed to withdraw his pretrial motions with prejudice, and the court made it clear that [he] would not be able to raise the motions again if he did proceed to trial." See United States v. Garrido, 995 F.2d 808, 815 (8th Cir. 1993).

We reject Blanks's argument that "good cause exists whenever the defendant's failure to file the motion on time or [his] withdrawal of the timely-filed motion was due to some circumstance beyond his control and the Government would not be prejudiced." Blanks accepted the plea agreement rejection as a known risk at the time he executed the waiver. Any argument that his counsel ineffectively advised him regarding the risks of withdrawing his pretrial motions and waiving his right to file further pretrial motions is more properly raised in a habeas petition. See United States v. Pherigo, 327 F.3d 690, 696 (8th Cir. 2003) ("[C]laims of ineffective assistance of counsel are best evaluated on facts developed outside of the record on direct appeal and are properly raised in a post-conviction motion under 28 U.S.C. § 2255 and not on direct appeal."). Further, "[t]he possibility that other parties and the court could accommodate a late-filed motion does not mandate that the court grant an exception to the deadline where the movant fails to make an adequate showing of good cause." United States v. Trobee, 551 F.3d 835, 838 (8th Cir. 2009). The fact that the district court's rejection of the plea agreement was beyond Blanks's control does not alone create good cause in light of his acceptance of that risk at the time of the waiver.[3]

_____

[3]The out-of-circuit cases that Blanks cites likewise lend him no aid. See, e.g., United States v. Mohammed, 501 F. App'x 431, 437–38 (6th Cir. 2012) (dismissal of untimely pretrial motion was abuse of discretion when a superseding indictment added a new charge after the motions deadline and therefore failure to raise timely motion was "based on its legal irrelevance to the pending charges"); United States v.

## B. Admission of Child Pornography Images

Blanks next argues that the district court abused its discretion in admitting child pornography images at trial despite his willingness to stipulate that they contained child pornography. He argues (1) that the district court failed to view the images before deciding to admit them and (2) that the images were unfairly prejudicial and needlessly cumulative. He argues further that the government should have been permitted to show only six images—one from each location at which child pornography was discovered—rather than the forty-two ultimately shown to the jury.

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfairly prejudicial evidence is so inflammatory on its face as to divert the jury's attention from the material issues in the trial," United States v. Fechner, 952 F.3d 954, 958 (8th Cir. 2020) (internal citation omitted), and thereby "tends to suggest decision on an improper basis," United States v. Pruneda, 518 F.3d 597, 605 (8th Cir. 2008) (quoting United States v. Myers, 503 F.3d 676, 682 (8th Cir. 2007)).

Although it might well have been a better practice to examine the images in question, the district court did not abuse its discretion by making its Rule 403 decision without having done so. The government indicated that it would show only a small representative sample of the images, which would be drawn from each of the devices and accounts on which child pornography was discovered. See United States v. Worthey, 716 F.3d 1107, 1114 (8th Cir. 2013) (child pornography video clips

---

Salahuddin, 509 F.3d 858, 860–63 (7th Cir. 2007) (district court clearly erred when it denied review of a pretrial motion that was untimely filed as a result of the parties' mutual mistake of law regarding the applicability of a prior offense).

properly admitted when government "had chosen clips as a representative sample . . . without including the worst of the videos" (internal quotation marks omitted)). The court explained that "ordinarily all the images are—all the videos are shown" and expressed its surprise that the government intended to show such a small percentage of the images, describing this decision as "a substantial withdrawal of what would ordinarily be shown." Thus, even without viewing the images, the court did not abuse its discretion in deciding that Blanks would not be unfairly prejudiced by the jury's viewing a small percentage of the images. See id. ("Given the parties' stated positions, we presume that the district court weighed this evidence pursuant to Rule 403 and concluded that the government should be permitted to play the video clips." (internal quotation marks, brackets, and citation omitted)).

We likewise disagree with Blanks's contention that the images were unfairly prejudicial and needlessly cumulative. The images helped the government prove that Blanks had knowingly received and possessed child pornography on a variety of different devices and mediums, including his computer and cellphone, a CD, and the internet. Although Blanks "conceded and stipulated" that the pictures were child pornography, "[s]tipulation to an element of the offense . . . does not generally constitute an evidentiary alternative having equal or greater probative value." United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006). Rather, "'the prosecution is entitled to prove its case by evidence of its own choice,' and 'a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'" Id. (quoting Old Chief v. United States, 519 U.S. 172, 186–87 (1997)).

Indeed, the government and court took steps to limit the images' prejudicial effect. Counsel warned prospective jurors during voir dire about the nature of the images. The government struck for cause prospective jurors who expressed concern about being able to view the images objectively, as well as many prospective jurors who worked with children, who knew victims of sexual assault, or who were

themselves victims. The government did not seek to admit any of the videos and introduced only forty-two of the more than 1,000 images received or possessed by Blanks. See generally United States v. Becht, 267 F.3d 767, 774 (8th Cir. 2001) (concluding that thirty-nine still photos of child pornography had limited prejudicial effect when counsel warned prospective jurors, the "court excused for cause three jurors who stated they would not be able to view such images without prejudicing the defendant," and the thirty-nine images were only a fraction of the hundreds of images that had been discovered).

Conclusion

The judgment is affirmed.

_____