**Geraldine BARBER, Plaintiff–Appellant,**

v.

**UNITED AIRLINES, INC. Defendant–Appellee.**

**No. 00–3546.**

United States Court of Appeals, Seventh Circuit.

Argued May 15, 2001.

Decided Aug. 16, 2001.

Before RIPPLE, MANION, DIANE P. WOOD, Circuit Judges.

ORDER

United Airlines Flight 516 from New Orleans to Chicago encountered turbulence on May 3, 1996. One of the passengers on board, Geraldine Barber, was injured, and she sued United Airlines for negligence. Prior to trial, the district court granted United Airlines' motion in limine, barring Barber's proffered aviation expert, Dr. Michael Hynes. The trial pro-

ceeded, but at the close of evidence the district court granted United Airlines judgment as a matter of law. Barber appeals, and we affirm.

I. Background

On May 3, 1996, Geraldine Barber was returning to the Chicago area aboard United Airlines Flight 516 from an educational conference held in New Orleans. Flight 516 was in Captain James Kainer's charge, and First Officer James O'Neal was second in command. The initial leg of the flight was smooth, but about forty miles south of St. Louis the plane encountered moderate to severe turbulence, which caused the plane to suddenly pitch up severely and then level off.

The incident lasted only a few moments, and the remainder of the flight was uneventful, but at the time the plane struck the turbulence, the "fasten seatbelt" sign was off and Geraldine Barber, whose seatbelt was loosely fastened, was thrown forward. She struck her head and shoulders against the seat in front of her. Barber claims that as a result she suffered shock, fright, and severe pain, and that the accident tore her rotator cuff, which required surgery. Barber also claims that while at work the following year, she fell after having tried to lift herself up using her injured shoulder. As a result, Barber claims that she suffered severe damage to her knee which also required surgery. Barber further contends that her injuries eventually caused her to take early retirement from her job as a school administrator.

Almost two years after the incident, Barber sued United Airlines alleging that United Airlines was negligent because it flew through an area where thunderstorms were predicted, because the pilot failed to properly use the radar, and because the pilots failed to avoid the weather system which caused the turbulence. To support

her, case, Barber retained Dr. Michael Hynes as an aviation expert, but prior to trial, on United Airlines' Motion in Limine, the district court[1] barred Hynes's testimony, concluding that Hynes's methodology was flawed because he ignored weather data and testimony given by the pilots to the extent that those facts conflicted with his opinion.

Barber then presented her case to the jury without Dr. Hynes's testimony. At trial, Captain James Kainer testified that from the moment of takeoff in New Orleans to approximately 100 miles south of St. Louis, the flight "was smooth, visibility was good, the seatbelt sign was off, it was a routine flight." He further testified that about forty miles outside of St. Louis, he turned on the plane's radar.[2] Captain Kainer explained that it takes about ten seconds for the radar to warm up, and that after he had turned it on and it had warmed up, he had a clear picture which showed no "convective or precipitative activity." However, a few minutes later, as Captain Kainer was tweaking the radar,[3] the aircraft struck clear air turbulence, pitching up. Captain Kainer explained that clear air turbulence cannot be seen either visually or on radar. He further testified that he had flown the same route earlier in the day and had not experienced any turbulence, nor did any other pilots report incidents of clear air turbulence along that route. Additionally, Captain Kainer stated that while thunderstorms were predicted in the area for later in the

day, at the time that the plane struck the turbulence there were no thunderstorms.

Geraldine Barber then took the stand. She testified that after the plane landed, while she was waiting inside the Chicago airport to go home, Captain Kainer approached her, telling her that he had flown through a thunderstorm and that he did not have his radar on. This was the first time that Barber made such a claim; she did not mention these statements in either her deposition or in a diary that she kept following the incident. Barber claimed that she remembered Captain Kainer's remarks after having seen him testify the previous day, which according to Barber jogged her memory.

Following the close of Barber's case, United Airlines moved for Judgment as a Matter of Law, arguing that Barber failed to present any evidence that United Airlines was negligent. Specifically, United Airlines asserted that because the undisputed evidence established that the turbulence was "clear air" turbulence which cannot be seen, and was not turbulence associated with thunderstorms, United Airlines was not liable for Barber's injuries. The district court agreed, granting United Airlines' Motion for Judgment as a Matter of Law. Barber appeals.

## II. Analysis

### A. Motion in Limine

On appeal, Barber initially argues that the district court erred in barring Dr.

---

1. The parties consented to trial by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For simplicity, we refer to the trial court as the district court.

2. Captain Kainer explained that a plane's radar is not always kept on; rather, pilots switch the radar on only when they believe there is a need for it. Captain Kainer explained that he turned the radar on because

he knew that storms were predicted for later in the evening and he wanted to see what the weather would be like on his drive home from the Chicago airport, and to get an overview of the weather coming into Illinois.

3. Captain Kainer also explained that the radar picture must be continuously "tweaked," i.e., adjusted for distance and/or intensity.

Hynes's expert testimony. Federal Rule of Evidence 702 provides that

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or training or education may testify thereto in the form of an opinion or otherwise.

■ In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that Rule 702 "imposes on the trial court the obligation, when dealing with expert witnesses, to ensure that scientific testimony is 'not only relevant but reliable.'" *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 608 (7th Cir.2000) (quoting *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786). This requires a trial judge to determine whether an expert's opinion was grounded in the methods and procedures of science, and whether the opinion had sufficient factual underpinnings. *Id.*

■ A review of Dr. Hynes's proffered expert opinion, his deposition testimony, and the overall record confirms the district court's conclusion that in formulating his opinion, "Dr. Hynes relied on weather data, but he rejected some weather data that contradicted his opinion." The district court also accurately noted that Dr. Hynes "rejected the testimony of the pilot and the copilot, which contradicted his opinion, [and][i]n formulating his opinion, Dr. Hynes did not give any additional data or information that he relied upon, which formed the basis of rejecting some of the weather data and the opinions of the copilots." Dr. Hynes also did not adequately explain why he ignored certain facts and data, while accepting others. Nor did Dr. Hynes present any other data which supported his opinion—he merely accepted some of the testimony and weather data that suited his theory and ignored other

portions of it that did not. Because in formulating his opinion Dr. Hynes cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to "assist the trier of fact." Fed.R.Civ.Proc. 702.

■ On appeal, Barber does not challenge the district court's reasoning that Dr. Hynes's proffered expert opinion failed to satisfy *Daubert* because of his selective use of data. Rather, she argues that instead of prohibiting Dr. Hynes from testifying entirely, he should have been allowed to testify about the effect of thunderstorms, namely that they are known to cause severe turbulence. She also believes that the district court should have allowed him to testify concerning the steps that United Airlines could have taken to avoid the turbulence or to warn passengers. We review the district court's decision to exclude expert testimony for an abuse of discretion. *United States v. Crotteau*, 218 F.3d 826, 831 (7th Cir.2000).

■ Barber's argument ignores the fact that the pilots themselves admitted the obvious—that thunderstorms are known to cause turbulence, including severe turbulence, and that company policy is to re-route flights to avoid thunderstorms and to warn passengers to fasten their seatbelts. Because these points were already established—and by the defendants' own employees—we do not believe the district court abused its discretion by failing to allow Dr. Hynes to likewise opine on the effects of thunderstorms. Moreover, the real question was not whether thunderstorms cause turbulence or whether United Airlines could have re-routed the flight, but whether the turbulence which Flight 516 struck was clear air turbulence or thunderstorm-related turbulence. As ex-

plained below, the evidence presented during trial established that the turbulence was clear air turbulence. Therefore, even had Dr. Hynes been allowed to testify on more limited grounds, he would have added nothing new and United Airlines would still have been entitled to judgment as a matter of law.[4]

■ Barber also argues that the district court should have granted her a continuance so as to allow her more time to retain another expert witness. A district court has broad discretion in determining whether to grant a continuance. *Brooks v. United States,* 64 F.3d 251, 256 (7th Cir. 1995). In this case, the district court refused to grant a continuance, noting that the case was almost two and a half years old and that it had already been continued and delayed so as to allow the plaintiff the opportunity to obtain expert witnesses. The district court also noted that the plaintiff had plenty of time to evaluate Dr. Hynes's report and deposition and that the defendant had filed the motion in limine within the time established by the court. Under these circumstances, the district court did not abuse its broad discretion in denying Barber's request for a continuance.

**B. Judgment as a Matter of Law**

Following the close of Barber's case, United Airlines moved for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50, arguing that Barber had failed to present sufficient evidence to support her theory of negligence. Specifically, United Airlines asserted that while thunderstorms may cause turbulence, and

while thunderstorms were predicted in the area of the flight for later in the day, there was no evidence that the turbulence which Flight 516 encountered was caused by thunderstorms. Rather, the only evidence presented during Barber's case-in-chief established that the turbulence which caused Barber's alleged injuries was clear air turbulence, which cannot be seen visually or by radar. Thus, United Airlines could not have avoided the turbulence or warned the passengers to fasten their seatbelts. The district court agreed with United Airlines and granted it judgment as a matter of law.

■ We review a district court's grant of judgment as a matter of law *de novo,* "asking whether the evidence presented, combined with all the reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Lane v. Hardee's Food Systems, Inc.,* 184 F.3d 705, 707 (7th Cir.1999).

In this case, Barber did not introduce enough evidence to support her claim. Specifically, she failed to introduce any evidence demonstrating that United Airlines could have predicted (and thus either have avoided or warned passengers about) the turbulence which caused her alleged injuries. Rather, the undisputed evidence established that the turbulence which Flight 516 struck was what is called "clear air turbulence." Clear air turbulence cannot be seen either visually or by radar. Additionally, the evidence established that United Airlines had no other warning of

---

**4.** Barber also argues that the district court should have held an evidentiary hearing to determine whether Dr. Hynes was qualified to testify on a more limited basis. There was no need for an evidentiary hearing, however, given the extensive briefing on the issue and the district court's more than thorough review of Dr. Hynes's proffered expert opinion and de-

position testimony. Also, as just noted, even if Dr. Hynes were allowed to testify on more limited grounds, that would not have altered the outcome of this case, and therefore we find no abuse of discretion in the district court's decision not to hold an evidentiary hearing.

the clear air turbulence, as Captain Kainer had flown the same route earlier in the day and had not experienced any clear air turbulence, and no other pilots who had flown that same route had called in reports of turbulence. Because there was no way that United Airlines could have known of the presence of clear air turbulence, it could not have avoided the turbulence or warned Barber of its presence.

■ Barber responds by arguing that she was entitled to get to the jury because she presented evidence that Captain Kainer had flown through a thunderstorm. The evidence she refers to is her own trial testimony; Barber testified that after the incident while she was waiting inside the airport to return home, Captain Kainer came up to her and told her that he had flown through a thunderstorm. This (i.e. at trial) was the first time that she made such a claim, having never mentioned this alleged statement in the pleadings or during discovery. In fact, she was thoroughly questioned in her pre-trial deposition about her conversation with the pilots immediately after the flight. She then said that one pilot told her they had no prior warning of bad weather. He thought it was fog. She said nothing about the pilot telling her they flew through a thunderstorm. Barber claims that she only remembered this statement after she saw Captain Kainer testifying at trial.

Initially, we note that no other witnesses claimed that the plane flew through a thunderstorm. In fact, several of Barber's coworkers (including her sister) testified that the day was sunny and beautiful, and they mentioned nothing about a storm. Nor were there any weather reports confirming thunderstorms at that time and in that location. In fact, the weather reports

for that day in St. Louis, Missouri showed only a trace of water at 3:00 p.m., and by 4:00 p.m. there was only $\frac{1}{100}$ of an inch of rain, and by that time Flight 516 had passed through St. Louis and had landed at O'Hare. Both pilots also testified as to the weather conditions, and stated specifically that they did not fly through a thunderstorm. Captain Kainer also testified that the weather information he had received prior to leaving New Orleans was that "there was some activity that was developing that was supposed to come into the Midwest maybe at the end of the evening, into that night," but the flight took place in the early-to-mid afternoon. Thus, Barber's last-minute recollection contradicts all of the other evidence, including her own deposition. And while we must be careful to avoid "supplanting our view of the credibility or the weight of the evidence for that of the jury," to avoid judgment as a matter of law a party must present "more than a mere scintilla of evidence." *Lane,* 184 F.3d at 706 (internal quotation omitted). In light of the entire record and the overwhelming contradictory evidence, Barber's self-serving statement that Captain Kainer had told her that he had flown through a thunderstorm constitutes, at best, a mere scintilla of evidence, and thus is insufficient to support her claim of negligence.[5]

■ Next, Barber argues that the evidence supports her theory that United Airlines was negligent in failing to warn the passengers that it was approaching a weather system and that turbulence was possible. In support of this theory, Barber points to Captain Kainer's testimony that prior to striking the turbulence, he saw clouds and haze in front of him. Accord-

---

**5.** This statement also does not contradict the other trial evidence which established that the turbulence was clear air turbulence, as opposed to thunderstorm-related turbulence.

Thus, even considering this statement, Barber still has not presented any evidence that thunderstorms in the area caused the turbulence which led to her alleged injuries.

ingly, even if there were no thunderstorms in the vicinity, Barber asserts that because Captain Kainer saw clouds and a haze before experiencing the turbulence, he could have warned the passengers to fasten their seatbelts. While it is true that Captain Kainer stated that he saw clouds prior to striking the turbulence, he explained that they were "little cirrus type clouds, just—it might have been a haze layer," and that such clouds cannot cause the type of turbulence they experienced. Barber did not presented any evidence to the contrary. Moreover, she had the opportunity to cross-examine Captain Kainer and to ask whether it were possible that the clouds were something else or could have caused the turbulence. Yet that was not the testimony; rather, Captain Kainer explained that the clouds were unrelated to a weather system and could not have caused the turbulence they experienced. Therefore, there is insufficient evidence to support this theory as well.

Barber further contends that the evidence created a reasonable inference that Captain Kainer failed to properly use the plane's radar, having turned it on only seconds before the incident. She argues that this constituted negligence. Initially, we note our skepticism of Barber's portrayal of the evidence. While Captain Kainer did note that he had turned on the radar only a few minutes before the plane pitched up, he definitively stated that the radar was on, warmed up, and that he had a clear picture of the flight path prior to encountering any turbulence. Barber challenges this evidence with her own last-minute recollection that Captain Kainer had told her that he did not have the radar on at all. This testimony contradicted her own diary in which she stated that Captain Kainer had told her that he got no warning from the radar. In any event, even if Captain Kainer failed to properly use the radar during the flight, Barber still could not succeed on her negligence theory be-

cause the evidence established that the turbulence which caused her alleged injuries was clear air turbulence, and that clear air turbulence can not be detected by radar. Therefore, any alleged negligence did not cause Barber's alleged injuries.

## C. Standard of Care

On appeal, Barber also argues that the district court improperly determined the appropriate standard of care. Prior to trial, the district court concluded that 14 C.F.R. § 91.13(a) establishes the standard of care at issue: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." Barber asserts that the appropriate standard is set forth in 49 U.S.C. § 44701(1)(A), which provides "the duty of an air carrier [is] to provide service with the highest possible degree of safety in the public interest." Barber also cites the standard of care section in Section 44702 which recognizes "the duty of an air carrier to provide service with the highest possible degree of safety in the public interest." 49 U.S.C. § 44702. Thus, according to Barber, United Airlines owed her a duty of the "highest possible" care. We need not decide this issue today, however, because no matter how high the standard of care, as discussed above, Barber has failed to present sufficient evidence to support her claim against United Airlines under any standard of care because there is no evidence from which a reasonable jury could conclude that United Airlines could have foreseen (and thus warned about or avoided) the turbulence.

## D. Missing Evidence Instruction

Finally, Barber argues that the district court erred in concluding that she was not entitled to a missing evidence instruction. Specifically, Barber contends that United Airline's failure to present cer-

tain documents pertaining to the weather at the time of the flight justifies giving a missing evidence instruction. In support of her position, she cites *Niehus v. Liberio,* 973 F.2d 526, 530 (7th Cir.1992), wherein this court explained that such an instruction may be appropriate if "there is evidence that a party would surely have introduced it had it been helpful, permitting an inference that the evidence would instead have helped his opponent." First, since this case never got to the jury, any issue of jury instructions is moot. Second, to the extent that Barber is really arguing that in considering the motion for judgment as a matter of law the district court should have inferred that the weather data destroyed by United Airlines favored Barber's case, no such inference is appropriate here because the evidence established that the records were destroyed in the ordinary course of business. Moreover, the records Barber complains were destroyed consisted merely of the weather forecast provided to the pilots prior to the flight, and since Barber obtained independent reports as to the actual conditions that day, the missing reports would still be insufficient to create an issue of fact for the jury because those reports merely predicted weather conditions. The evidence established the actual conditions the plane encountered, namely, clear air turbulence which cannot be seen and thus cannot be avoided or warned against.

## III. Conclusion

While there is no dispute that United Airlines Flight 516 struck turbulence en route from New Orleans to Chicago and that the plaintiff Geraldine Barber was injured, Barber has failed to present sufficient evidence to establish negligence on United Airlines' part, no matter how high the standard of care, because the undisputed evidence establishes that the turbulence was clear air turbulence which could not have been predicted. The district court

also did not abuse its discretion in barring Barber's proffered expert because in formulating his opinion Dr. Hynes selectively considered the pilots' testimony and the weather reports and thus his opinion lacked a scientific basis. For these and the foregoing reasons WE AFFIRM.

RIPPLE, Circuit Judge. I concur in the result.