929 So.2d 137 (2006)
STATE of Louisiana
v.
Bashan STANTON.
No. 2005-KA-0812.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 2006.
Eddie J. Jordan, Jr., District Attorney, Yolanda J. King, Assistant District Attorney, New Orleans, LA, for State of Louisiana.
Laura Pavy, Louisiana Appellate Project, New Orleans, LA, for Appellant, Bashan Stanton.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The defendant, Bashan Stanton, was convicted in Orleans Parish of one count of *138 attempted armed robbery and of one count of attempted manslaughter. He was sentenced to forty-five years on the attempted armed robbery conviction without the benefit of parole, probation, or suspension of sentence and to twenty years on the attempted manslaughter conviction. Both sentences were ordered to be served concurrently with each other and with a fifteen-year sentence that Mr. Stanton received in connection with three armed robberies that he committed in Jefferson Parish. Mr. Stanton then filed and the trial court denied a motion to reconsider the sentences. Mr. Stanton is now before this Court appealing his sentences in connection with the convictions in Orleans Parish claiming that they were excessive.

STATEMENT OF THE CASE
Mr. Stanton, Damien A. Roberts, and Dwayne Hines were each charged by a bill of information with one count of attempted armed robbery in violation of La. R.S. 14:27(64). Mr. Stanton was also charged in the same bill of information with an additional count of attempted second degree murder in violation of La. R.S. 14:27(30.1). These charges arose out of activities that occurred on December 27, 2002.
At his arraignment Mr. Stanton pled not guilty to the charges against him. At a hearing on a motion to suppress statements made by Mr. Roberts and Mr. Hines, they each testified regarding the crimes with which they were charged and denied any involvement in them. After their testimony was taken, the State nolle prosequied the charges against them. Mr. Stanton was subsequently tried before a jury and found guilty of attempted armed robbery and attempted manslaughter. Prior to sentencing, the trial court judge ordered the State of Louisiana Division of Probation and Parole to conduct a pre-sentence investigation of Mr. Stanton. After a pre-sentence report was completed, the trial court judge sentenced Mr. Stanton and noted that he had been convicted of crimes of violence.

STATEMENT OF FACT
At Mr. Stanton's trial, Louis Lee testified that he owned the One Stop Tire Shop, a tire repair business located at 7532 Chef Menteur Highway in New Orleans. He and one of his employees, Harry Hillard, were working in the parking lot in front of the store when a bluish green Dodge Stratus automobile backed into the lot. Mr. Lee testified that the two individuals who were passengers in the car, Mr. Roberts and Mr. Hines, exited the vehicle and walked across the street. The driver of the car, who was later identified as Mr. Stanton, got out of the car and approached Mr. Lee. Mr. Stanton told Mr. Lee that his "old lady" had driven over a curb and caused a tire to go flat. He said that he needed to have the tire repaired. Mr. Stanton, who wore a pair of gloves when he exited the car, agreed to purchase a tire recommended by Mr. Lee. Mr. Lee testified that the purchase price for the tire was $25.00. One of Mr. Lee's employees replaced the damaged tire while Mr. Lee chatted with Mr. Stanton. After the tire had been replaced, Mr. Stanton paid Mr. Lee.
Mr. Stanton then returned to his car. After Mr. Stanton had returned to the car, he left the car again and approached Mr. Lee. As he approached Mr. Lee this time, Mr. Stanton was holding a small pistol that Mr. Lee thought was a "small six shot pistol." Mr. Stanton pointed the gun at Mr. Lee and demanded that Mr. Lee give him the money that Mr. Lee had in his pocket. Mr. Lee initially told Mr. Stanton to "put that thing down." At that point *139 Mr. Stanton pulled the trigger of the gun twice, but both times the gun made a clicking sound and misfired. Mr. Lee testified that "[i]f the bullets would have been any good, I wouldn't be here today."
After the gun misfired, Mr. Lee realized that Mr. Stanton was serious about robbing him, and Mr. Lee took the money out of his pants pocket. When Mr. Lee reached to hand the money to Mr. Stanton, he dropped it on the ground in front of Mr. Stanton. Without retrieving the money, Mr. Stanton turned and ran, leaving his car at the scene. Mr. Lee chased Mr. Stanton. While he was fleeing, Mr. Stanton fired several shots at Mr. Lee but none hit him. The gun that was used to fire the shots was never recovered, but the police later found at the scene the gloves that Mr. Stanton had been wearing.
Mr. Hillard also testified at the trial. Mr. Hillard's version of the incident involving Mr. Lee and Mr. Stanton was essentially the same as Mr. Lee's version. Mr. Hillard testified that he heard Mr. Stanton's gun "click" twice and fire shots four times. His testimony and Mr. Lee's testimony differed on the amount that was charged for the new tire by a few dollars, and their testimony was not exactly the same regarding where Mr. Roberts and Mr. Hines initially exited the vehicle driven by Mr. Stanton. Both Mr. Lee and Mr. Hillard testified that they had independently identified Mr. Stanton in a photographic line-up as the person who tried to rob and shoot Mr. Lee. Both men also identified Mr. Stanton in court. Mr. Hillard further testified that Mr. Stanton did not attempt to rob or shoot him, because Mr. Stanton was concentrating on robbing Mr. Lee. Finally, both Mr. Lee and Mr. Hillard identified in court the gloves that Mr. Stanton had been wearing.
New Orleans Police Department Detective Walter Gifford testified at the trial that he had investigated the crimes perpetrated by Mr. Stanton. Although Mr. Roberts and Mr. Hines had been apprehended by another officer shortly after Mr. Stanton fled the crime scene, Detective Gifford testified that Mr. Stanton had not been apprehended. Mr. Hines and Mr. Roberts, however, had identified Mr. Stanton as the person who tried to rob Mr. Lee, and they had given Detective Gifford Mr. Stanton's address. Detective Gifford prepared a photographic line-up for Mr. Lee and Mr. Hillard to view, and they both independently identified Mr. Stanton as the man who shot at Mr. Lee and tried to rob him. Detective Gifford then obtained a warrant for Mr. Stanton's arrest and a warrant to search his home. Although the search warrant was executed, the weapon used by Mr. Stanton was never located. Finally, Detective Gifford testified that Mr. Stanton ultimately surrendered to the police.

ERRORS PATENT
Mr. Stanton has requested this Court to review the record in this case for any patent errors and to take any necessary corrective action in connection with any such errors that are found. After a careful review of the record, we have determined that there are no errors patent.

ASSIGNMENTS OF ERROR
Mr. Stanton's counsel has raised one assignment of error in this case. Additionally, Mr. Stanton has raised three pro se assignments of error.

Assignment of Error: The trial court imposed an excessive sentence.
Mr. Stanton contends that the sentences imposed upon him for his two convictions are excessive. He urges this Court to vacate his sentences and remand this case for re-sentencing. Mr. Stanton argues that because the sentences are at *140 or near the maximum sentences that could have been imposed for his crimes, the sentences are excessive under the circumstances of his case.
The United States Constitution prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. The Louisiana Constitution expressly provides that "[n]o law shall subject any person ... to cruel, excessive, or unusual punishment." La. Const. art. I, § 20.
In State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977, the Louisiana Supreme Court stated that the deliberate inclusion of the prohibition against excessive sentences in the state constitution by its redactors imposed on the court the duty to review the sentencing provisions of criminal statutes. The Supreme Court further stated that the court is permitted to determine both whether the statutory range of sentences and the sentence of a particular offender is excessive, even if that offender's sentence were within the prescribed statutory range. Id.
In State v. Bonanno, 384 So.2d 355 (La. 1980), the Louisiana Supreme Court discussed the criteria for determining whether a sentence is unconstitutionally excessive as follows:
[T]o determine whether a certain penalty is excessive we must determine whether that penalty is grossly disproportionate to the severity of the crime. To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.
384 So.2d at 358 (citations omitted).
In State v. Soco, 441 So.2d 719 (La. 1983), the Supreme Court also stated that "[m]aximum sentences provided by the statutes are reserved for the `worst kind of offender'." Id. at 720, citing State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982). The Supreme Court further stated:
In order for there to be proper review of the sentence to determine its constitutionality, La. Const. art. 1, § 20, that is, whether the defendant is the worst kind of offender, an adequate record specifying the basis for the sentence must be made. This record is mandated by La. C.Cr.P. 894.1, which also provides the sentencing judge with guidelines to follow when passing sentence.
Id.
The Supreme Court has also stated that "[i]f the judge records the factors affecting his sentencing decision, the sentence should not be set aside as excessive unless it is grossly disproportionate to the offense or represents nothing more than the needless infliction of pain and suffering." State v. Pike, 426 So.2d 1329, 1335 (La.1983). Additionally, the Supreme Court has held that "the trial court judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1 [La. C.Cr.P. art. 894.1, which sets forth sentencing guidelines], the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." State v. Smith, 433 So.2d 688, 698 (La.1983).
In the instant case the trial court judge ordered a pre-sentence investigation, which revealed that Mr. Stanton had an extensive criminal record as a juvenile and that he also had an adult record when, at the age of nineteen, he committed the crimes of which he was convicted in this case. He had also pled guilty to three additional armed robberies in a neighboring parish as part of what the trial court judge referred to as a "crime spree." Additionally, the trial court judge noted that *141 the report of the pre-sentence investigation stated that Mr. Stanton "seems to show no regard for others." Based on Mr. Stanton's prior criminal history and on his disregard for human life, the report recommended that Mr. Stanton be given the maximum sentence.
At the sentencing hearing the trial court judge stated that Mr. Stanton pointed a weapon directly at Mr. Lee and that the only reason that Mr. Lee was not killed was that the gun misfired. The judge said that had the gun not misfired, Mr. Lee and anyone else who might have been in the line of fire could have been killed or injured in the robbery that Mr. Stanton committed "in broad daylight." The judge also noted that the pre-sentence investigation report disclosed that Mr. Lee had stated that Mr. Stanton "showed no feelings for a person's life and showed no sympathy."
The trial court judge told Mr. Stanton at the sentencing hearing that "[t]he Court feels that under Article 894.1 of the sentencing guidelines of this court that certainly, there is an undue risk during any period of a suspended sentence or probation, you would commit another crime." She also advised Mr. Stanton that he needed correctional treatment in a custodial environment and should be committed to an institution. The judge further stated that any lesser sentence than the one she was going to impose "would certainly deprecate the seriousness of this offense."
The judge also considered the aggravating circumstances listed in La.C.Cr.P. art. 894.1(B), which sets forth the sentencing guidelines for criminal defendants, and she found that there were several such circumstances present in the instant case. First, the judge noted that in committing his crimes, Mr. Stanton used threats of or actual violence, caused his victim to be in danger, and caused his victim to feel that his life was being threatened by both Mr. Stanton's words and his actions. See La. C.Cr.P. art. 894.1(B)(6). Second, Mr. Stanton had used a dangerous weapon. See La.C.Cr.P. art. 894.1(B)(10). Third, Mr. Stanton had foreseeably endangered human life by discharging a firearm. See La.C.Cr.P. art. 894.1(B)(18). The trial court judge also stated that she had found no mitigating circumstances that were applicable in Mr. Stanton's case and noted that even the car he was driving at the time of the crime was stolen.
Considering the record and the reasons that the trial court judge gave for the sentence that she imposed, we find that the sentence was in no way excessive. Mr. Stanton committed very serious crimes without regard for human life, and he already had an extensive criminal record when he committed these crimes. The trial court judge carefully considered the sentences she imposed, and they comport with applicable law. Mr. Stanton's assignment is without any merit.

Pro Se Assignment of Error No. 1: The trial judge considered prior juvenile adjudications in determining what sentence to impose in violation of Apprendi v. New Jersey and State v. Brown.

Mr. Stanton argues that the trial court judge improperly considered his juvenile adjudications in determining his sentence. He claims that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and State v. Brown, 2003-2788 (La.7/6/04), 879 So.2d 1276, prohibit a trial court judge from considering a defendant's juvenile record when imposing a sentence.
In the Apprendi case, the United States Supreme Court specifically rejected that position. The Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty *142 for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added). In the instant case what the trial court considered was the fact of a prior conviction, which is expressly permitted by Apprendi. Additionally, we note that Apprendi requires a jury, rather than a judge, to determine whether a particular fact was present in connection with a defendant's criminal conduct, if the finding of that fact could increase the penalty for a crime beyond the statutory maximum. In the instant case, Mr. Stanton did not receive a penalty that exceeded the statutory maximum. Therefore, the Apprendi case in not applicable to Mr. Stanton's situation.
We also note that Brown, supra, upon which Mr. Stanton relies, is similarly inapplicable in the instant situation. In the Brown case, the defendant was adjudicated a habitual offender under La. R.S. 15:529.1, the Louisiana Habitual Offender Law. The issue before the Louisiana Supreme Court was whether a prior non-jury juvenile adjudication could be used as a predicate offense under the habitual offender statute. In the instant case, Mr. Stanton was not charged as a habitual offender. Therefore, the Brown case is not applicable.
There is nothing in the law that prohibits a trial court judge from considering the fact that a convicted felon had a criminal record as a juvenile in determining what sentence to impose. Based on the discussion above, we find that Mr. Stanton's first pro se assignment of error is without merit.

Pro Se Assignment of Error No. 2: The trial judge used elements not presented to a jury during sentencing in violation of Apprendi v. New Jersey.

In this assignment of error, Mr. Stanton is claiming that the trial court judge improperly used facts regarding juvenile adjudications in considering what sentence to impose without presenting the facts to a jury. Unless the trial court imposes a sentence that exceeds the maximum sentence for the crime for which a defendant was convicted, the trial court judge is expressly permitted to consider prior convictions in sentencing even though they might be juvenile adjudications. Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. This assignment of error is without merit.

Pro Se Assignment of Error No. 3: Mr. Stanton was denied effective assistance of counsel.
Mr. Stanton alleges that his trial counsel was ineffective in eleven specific ways, some of which involve factual issues that may require an evidentiary hearing. With respect to raising on appeal a claim of ineffective assistance of counsel, the Louisiana Supreme Court stated in State v. Prudholm, 446 So.2d 729 (La.1984), that a "defendant's remedy is through post conviction relief in the trial court where the quality of the attorney's assistance can be fully developed and explored." Id. at 737. Mr. Stanton has the right to raise the issue of ineffectiveness of counsel post conviction.

CONCLUSION
We find that there was no error committed by the trial court in this case. Mr. Stanton's conviction and sentence are hereby affirmed.
AFFIRMED.