FILED
United States Court of Appeals
Tenth Circuit

July 31, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RAUL ROGER ORONA, JR.,

Defendant–Appellant.

No. 12-2129

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 5:11-CR-01385-BB-1)

Dennis James Candelaria, Esq., Office of the Federal Public Defender, District of New Mexico, Las Cruces, New Mexico, for the Defendant-Appellant.

James Robert Wolfgang Braun (Kenneth J. Gonzales and Laura Fashing with him on the briefs), Office of the United States Attorney, District of New Mexico, Albuquerque, New Mexico, for the Plaintiff-Appellee.

Before **BRISCOE**, Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Raul Roger Orona, Jr., appeals from his conviction and sentence for being a felon in possession of a firearm. Orona was sentenced to 198 months' imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). He argues that the use of a juvenile adjudication as a predicate offense for ACCA purposes violates the Eighth Amendment's prohibition against cruel and unusual punishment. We disagree. We conclude that Orona has not established that a national consensus exists against the use of juvenile adjudications to enhance a subsequent adult sentence. Further, because the full punishment of a sentence imposed pursuant to a recidivist statute is related to the crime of conviction rather than to any prior offenses, Orona's reliance on precedent establishing that juveniles are less culpable than adults is misplaced. We also reject Orona's claim that the residual clause of ACCA is unconstitutionally vague. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Following a three-day jury trial, Orona was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A pre-sentence investigation report ("PSR") prepared for Orona calculated a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2) because Orona had at least two previous felony convictions for a crime of violence or a controlled substance offense. The PSR noted that Orona had been convicted of extortion and aggravated assault in December 2002, and of aggravated fleeing a law enforcement officer in January 2009, both in New Mexico state court. Because of his extensive criminal history, including three juvenile adjudications,

eight adult convictions, and three other arrests, Orona had a criminal history category of V. With an offense level of 24, Orona would be subject to an advisory Guidelines range of 92 to 115 months' imprisonment. See U.S.S.G. § 5, pt. A.

Based on Orona's status as an armed career offender, however, the PSR recommended that he be sentenced with a base offense level of 33 pursuant to U.S.S.G. § 4B1.4(a) and 18 U.S.C. § 924(e). In addition to the two state cases noted supra, the PSR also identified a juvenile adjudication from 2000 in which Orona admitted to four counts of aggravated assault with a firearm and one count of shooting at or from a motor vehicle. Orona was arrested on these charges when he was seventeen years old. He was represented by counsel before the Fifth Judicial District, Children's Court Division, in Roswell, New Mexico, and was committed to Children, Youth & Families Department custody for a period of two years. As an armed career offender, Orona's advisory Guidelines range was 210 to 262 months' imprisonment, with a statutory minimum of 180 months.

Orona objected to the PSR, arguing that the use of a juvenile adjudication as a predicate conviction for ACCA purposes violates the Eighth Amendment. The probation office responded that juvenile adjudications qualify as predicate offenses under § 924(e)(2). It also noted that even if the juvenile adjudication did not qualify, Orona could nevertheless be sentenced as an armed career offender by substituting his 2002 adult conviction for shooting at or from a motor vehicle as the third predicate offense. In addition to his juvenile adjudication contention, Orona argued that the residual clause of

ACCA is unconstitutionally vague. And he requested a downward variance if the district court rejected his constitutional arguments.

At sentencing, the district court concluded that a sentence under ACCA was constitutional, but stated it was persuaded that "defendant has somewhat less culpability" given that one of his predicate offenses occurred when he was a juvenile. The court elected to vary downward one level and sentenced Orona to 198 months' imprisonment and five years of supervised release. Orona timely appealed.

## II

We review de novo whether a criminal sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. United States v. Williams, 576 F.3d 1149, 1165 (10th Cir. 2009). As the Supreme Court explained in Graham v. Florida, 130 S. Ct. 2011 (2010), the Eighth Amendment bars "the imposition of inherently barbaric punishments under all circumstances" and punishments that are "disproportionate to the crime" committed. Id. at 2021.

> The Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.

Id.

Although the second line of analysis had previously only been applied in the death penalty context, the Court explained that the categorical approach was appropriate in Graham, which concerned sentencing juvenile offenders to life without parole for non-

-4-

homicide crimes, because "a sentencing practice itself is in question." Id. at 2022. That

is, the "case implicate[d] a particular type of sentence as it applies to an entire class of

offenders who have committed a range of crimes." Id. at 2022-23.

Orona asserts a categorical challenge rather than a proportionality claim based on

his particular facts and circumstances. He argues that the sentencing practice of using

juvenile adjudications as predicate offenses for ACCA violates the Eighth Amendment.

Such challenges are subject to the following analysis:

> The Court first considers objective indicia of society's standards, as
> expressed in legislative enactments and state practice to determine whether
> there is a national consensus against the sentencing practice at issue. Next,
> guided by the standards elaborated by controlling precedents and by the
> Court's own understanding and interpretation of the Eighth Amendment's
> text, history, meaning, and purpose, the Court must determine in the
> exercise of its own independent judgment whether the punishment in
> question violates the Constitution.

Id. at 2022 (quotations and citations omitted).[1]

**A**

As to the first prong of this test, "the clearest and most reliable objective evidence

---

[1] It is unclear to us that a categorical challenge is viable for sentences other than life imprisonment or death. See Miller v. Alabama, 132 S. Ct. 2455, 2463 (2012) (noting that in one line of Eighth Amendment precedent, the Court "has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty"). But see id. at 2470 ("In considering categorical bars to the death penalty and life without parole, we ask as part of the analysis whether objective indicia of society's standards, as expressed in legislative enactments and state practice, show a national consensus against a sentence for a particular class of offenders." (quotations omitted)). However, the government does not challenge Orona's categorical argument on this basis, and thus we assume without deciding that a categorical challenge may be leveled against a term-of-years sentence.

of contemporary values is the legislation enacted by the country's legislatures." Atkins v. Virginia, 536 U.S. 304, 312 (2002) (quotation omitted). Orona argues that there is "arguably" a national consensus against using juvenile adjudications as predicate offenses. He relies on a law review note for this proposition:

> [F]orty-one states had habitual offender statutes. Of those states, California and Texas were the only states which permitted a juvenile adjudication to qualify as a strike. Nineteen states explicitly prohibited the use of juvenile adjudications as a strike, five by statute, and fourteen through judicial determination. In the remaining twenty states that were silent on the issue, each contained language in its criminal statutes indicating that prior juvenile adjudications may not be used towards adult criminal sentences.

Joseph I. Goldstein-Breyer, Note, Calling Strikes before He Stepped to the Plate: Why Juvenile Adjudications Should Not Be Used To Enhance Adult Sentences, 15 Berkeley J. Crim. L. 65, 88 (2010). As Orona acknowledges, however, another note concludes that "the mixed-bag of jurisdictions' policies and practices on using juvenile-age convictions for recidivism purposes demonstrates the lack of a national consensus regarding this particular sentencing regime." Christopher Walsh, Note, Out of the Strike Zone: Why Graham v. Florida Makes It Unconstitutional To Use Juvenile-Age Adjudications as Strikes To Mandate Life Without Parole under § 841(b)(1)(A), 61 Am. U. L. Rev. 165, 187 (2011).

Following an independent review of states' sentencing practices, we agree with the latter conclusion: states have not reached a meaningful consensus regarding the manner in which juvenile adjudications may be considered in adult sentencing proceedings. The Goldstein-Breyer quotation above relies on figures listed in an amicus brief submitted in

-6-

People v. Nguyen, 209 P.3d 946 (Cal. 2009). See Goldstein-Breyer, supra, at 88 & nn.170-74 (citing Brief of Amicus Curiae Criminal Def. Clinic, Mills Legal Clinic of Stanford Law Sch. on Behalf of Respondent, Nguyen, 209 P.3d 946 [hereinafter, "Clinic Brief"]). However, the Clinic Brief looked only to state statutes that "closely parallel[] the structure of California's Three Strikes law" and explicitly excludes "context-specific statutes that allow individual prior convictions or their equivalents to function as enhancements for specific instant offenses." Clinic Brief at 3 n.3.

ACCA, however, does not closely parallel the statute at issue in Nguyen. Nguyen concerned California Penal Code § 667, which provided for lengthy mandatory minimum sentences if a defendant with two qualifying prior felonies was convicted of any instant felony. Cal. Penal Code § 667(e)(2)(A) (2008);[2] see also Lockyer v. Andrade, 538 U.S. 63, 67 (2003) ("Under California's three strikes law, any felony can constitute the third strike, and thus can subject a defendant to a term of 25 years to life in prison."). ACCA, in contrast, provides for an enhanced sentence only with respect to an individual who: (1) unlawfully possesses a firearm or ammunition; and (2) "has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. §§ 924(e)(1), 922(g). In other words, ACCA is a "context-specific statute[] that allow[s] individual prior convictions or their equivalents to function as enhancements for specific instant

---

[2] The California statute has since been amended by Proposition 36, effective November 7, 2012.

offenses," Clinic Brief at 3 n.3, and falls outside the data set discussed in the Goldstein-

Breyer note. We accordingly reject Orona's reliance on this piece of scholarship.[3]

Looking more broadly to states' use of juvenile adjudications in adult sentencing

proceedings does not indicate a clear consensus. Two states treat juvenile adjudications

as convictions for purposes of broadly applicable habitual offender statutes. See Cal.

Penal Code § 667(d)(3); Tex. Penal Code § 12.42(f). At least seventeen others allow

prior juvenile adjudications to enhance a sentence in at least some circumstances. See

Del. Code tit. 16, § 4751B(2) (juvenile adjudications for certain crimes may be counted

as prior convictions resulting in aggravated sentences for drug possession); 720 Ill.

Comp. Stat. 5/24-1.6(a)(3)(D) (unlawful use of a weapon treated as an aggravated felony

if "the person possessing the weapon was previously adjudicated a delinquent minor . . .

for an act that if committed by an adult would be a felony"); Mich. Comp. Laws

§ 257.625(9), (25) (providing for increased sentences for driving under the influence if

the defendant has certain prior convictions, defined by Mich. Comp. Laws § 257.8a(a) to

include "a juvenile adjudication, probate court disposition, or juvenile disposition for a

violation that if committed by an adult would be a crime"); Tenn. Code § 40-35-

108(b)(3)(B) (providing that "a finding or adjudication that a defendant committed an act

as a juvenile that would constitute a Class A or Class B felony if committed by an adult

---

[3] We also note that the Clinic Brief reached a definitive conclusion as to the validity of using juvenile adjudications to enhance adult sentences in only twenty-one of the forty-one states it considered. Clinic Brief at 4.

shall be considered as a prior conviction for the purposes of" determining whether a defendant is a career offender subject to enhanced sentencing); People v. Mazzoni, 165 P.3d 719, 722-23 (Colo. App. 2006) ("[A] sentencing court may determine, without benefit of a jury finding, facts regarding juvenile adjudications and use them as a basis to impose an aggravated range sentence." (noting Col. Rev. Stat. § 19-1-103(2)); Nichols v. State, 910 So. 2d 863, 864-65 (Fla. Dist. Ct. App. 2005) (per curiam) (approving use of prior juvenile dispositions in "calculating the lowest permissible sentence permitted by the appellant's scoresheet . . . [under] Florida Rule of Criminal Procedure 3.704(d)(14)(B)"); Ryle v. State, 842 N.E.2d 320, 321 (Ind. 2005) ("Since nearly the beginning of our present criminal code, Indiana courts have recognized that criminal behavior reflected in delinquent adjudications can serve as the basis for enhancing an adult criminal sentence."); State v. Bruegger, 773 N.W.2d 862, 885-86 (Iowa 2009) (discussing Iowa Code § 901A.1(f)(2), which defines "prior conviction" to include adjudications of delinquency for purposes of imposing enhanced recidivist sentencing under Iowa Code § 901A.2(3), but remanding for an evidentiary hearing on defendant's as-applied Eighth Amendment challenge); State v. Harris, 269 P.3d 820, 832 (Kan. 2012) (rejecting argument that "prior juvenile adjudications must have been pleaded in the charging document and proven to a jury beyond a reasonable doubt because they were facts increasing the penalty for a crime beyond the prescribed statutory maximum"); Commonwealth v. Anderson, 963 N.E.2d 704, 717 (Mass. 2012) ("By adopting the definition of 'violent crime' in [Mass. Gen. Laws ch. 140, § 121], in the sentencing

enhancement provisions of [Mass. Gen. Laws ch. 269, § 10G], with its reference to acts of delinquency, the Legislature reflected its intention to define a juvenile adjudication as a 'conviction,' as that term is used in § 10G [which is similar to ACCA]."); State v. McFee, 721 N.W.2d 607, 613-14 (Minn. 2006) (en banc) ("While originally juvenile adjudications could not be used in any other proceeding, the legislature has now provided for use of juvenile adjudications as predicate offenses and as enhancements in a variety of criminal contexts." (citation omitted)); State v. Leeper, 565 S.E.2d 1, 7-8 (N.C. 2002) (affirming death sentence imposed upon jury finding of statutory aggravating factor "that defendant had been previously adjudicated delinquent in a juvenile proceeding for an offense that would have been a felony involving the use of or threat of violence to the person had defendant been a[n] adult"); State v. Adkins, 951 N.E.2d 766, 770 (Ohio 2011) (Ohio Rev. Code § 2901.08 "made clear that for enhancement purposes, courts could consider a juvenile adjudication as a conviction" subject to certain exceptions); State v. Harris, 118 P.3d 236, 243-44 (Or. 2005) (en banc) (the legislature may "choose[] to designate, inter alia, a prior nonjury juvenile adjudication as an element that increases the seriousness of a crime or lengthens a criminal sentence, so long as the existence of that prior adjudication is proved to a jury, or such a requirement is knowingly waived" (footnotes omitted)); Commonwealth v. Moore, 937 A.2d 1062, 1068 (Pa. 2007) ("[A] juvenile adjudication may be considered as a 'conviction' for purposes of establishing that a defendant has a significant history of felony convictions pursuant to the [Pa. Cons. Stat. § 9711(d)(9)] aggravating factor."); Carter v. Commonwealth, 562 S.E.2d 331, 335

(Va. Ct. App. 2002) (construing mandatory minimum sentence under Va. Code § 18.2-308.2 to apply if a defendant is shown to have certain prior juvenile adjudications); State v. Weber, 149 P.3d 646, 650, 653 (Wash. 2006) (en banc) (concluding that juvenile adjudications need not be proven to a jury even though inclusion of "juvenile adjudications in [a defendant's] offender score would undeniably increase his maximum sentence above the sentence supported by the jury's verdict").

At least twenty-three additional states permit the sentencing court to consider prior juvenile adjudications in selecting a sentence within a statutory range. See Alaska Stat. § 12.55.155(c)(19) (sentencing outside a presumptive range, but within a statutory range, permissible if "the defendant's prior criminal history includes an adjudication as a delinquent for conduct that would have been a felony if committed by an adult"); Ky. Rev. Stat. § 532.055 ("Juvenile court records of adjudications of guilt of a child for an offense that would be a felony if committed by an adult . . . may be used during the sentencing phase of a criminal trial; however, the fact that a juvenile has been adjudicated delinquent of an offense that would be a felony if the child had been an adult shall not be used in finding the child to be a persistent felony offender . . . ."); Me. Rev. Stat. tit. 15, § 3308(2) ("[A]ny court subsequently sentencing the juvenile after the juvenile has become an adult may consider only murder and Class A, Class B and Class C offenses committed by the juvenile . . . ."); Md. Code Regs. § 14.22.01.10(B)(2) (including certain juvenile delinquency adjudications in calculating the offender score for purposes of state sentencing guidelines); N.Y. Family Ct. Act § 381.2(2) (notwithstanding the general rule

-11-

barring juvenile adjudication records, "another court, in imposing sentence upon an adult after conviction may receive and consider the records and information on file with the family court, unless such records and information have been sealed"); N.D. Cent. Code § 27-20-33 ("The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against the child in any proceeding in any court other than a juvenile court, whether before or after reaching majority, except for impeachment or in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report."); Okla. Stat. tit. 22, § 982 (presentence investigation reports to include "prior juvenile and criminal records"); R.I. Gen. Laws § 14-1-40(b) ("Any finding of delinquency based upon acts which would constitute a felony, if committed by an adult, shall be available to the attorney general for use in its recommendations to any court in sentencing and that record may be taken into consideration for the purposes of sentencing."); S.D. Codified Laws § 23A-27A-2 (in considering death sentence, jury shall consider "prior criminal or juvenile record of the defendant"); Vt. Stat. tit. 33, § 5117(b)(1)(C) (permitting the use of juvenile adjudication records by a "court in which a person is convicted of a criminal offense for the purpose of imposing sentence upon or supervising the person"); Wis. Stat. § 938.35 (prior juvenile adjudication records may be considered "[i]n sentencing proceedings after conviction of a felony or misdemeanor and then only for the purpose of a presentence investigation"); Ex Parte Thomas, 435 So. 2d 1324, 1326 (Ala. 1982) (per curiam) ("[A] prior youthful offender adjudication is properly considered in determining the sentence to be imposed within the statutory range

-12-

for a later crime for which the defendant has been convicted. That same youthful offender determination, however, may not be considered a prior felony conviction, as contemplated by the Habitual Offender Act, so as to bring the defendant within the purview of the higher sentence categories of that Act."); Vanesch v. State, 16 S.W.3d 306, 310 (Ark. Ct. App. 2000) ("The Arkansas Code clearly permits the introduction of evidence of juvenile adjudications in the sentencing phase of trial when the requirements of Ark. Code Ann. § 16-97-103(3) are satisfied."); State v. Christensen, 828 P.2d 332, 333 (Idaho Ct. App. 1992) (affirming sentence based in part on the fact that defendant "had committed various offenses as a juvenile which were equivalent to first degree burglary, grand theft, probation violation and other crimes"); State v. Stanton, 929 So. 2d 137, 142 (La. Ct. App. 2006) (although Louisiana Supreme Court has held that a juvenile adjudication may not be used as a predicate offense under the habitual offender statute, "[t]here is nothing in the law that prohibits a trial court judge from considering the fact that a convicted felon had a criminal record as a juvenile in determining what sentence to impose"); Callins v. State, 975 So. 2d 219, 229 (Miss. 2008) (en banc) (noting that defendant's sentence was based in part on consideration of juvenile adjudications); Mason v. State, 368 S.W.3d 182, 185 (Mo. Ct. App. 2012) (certain juvenile offenses must be included in presentence investigative report under Mo. Rev. Stat. § 211.321.1); State v. Phillips, 159 P.3d 1078, 1082 (Mont. 2007) (stating that "juvenile records may be noted in a [presentence investigation report], and considered at sentencing"); State v. Albers, 758 N.W.2d 411, 418 (Neb. 2008) (affirming sentence based in part on

defendant's numerous juvenile dispositions); State v. Bieniek, 985 A.2d 1251, 1256 (N.J. 2010) (per curiam) (approving trial court's consideration of the fact that "defendant had a juvenile record going back to when he was sixteen years old" in setting a sentence for an adult); State v. Moreno, 113 P.3d 992, 994 (Utah Ct. App. 2005) (sentence informed by presentence investigation report that includes information regarding defendant's juvenile adjudications); State v. Tyler, 565 S.E.2d 368, 375 (W. Va. 2002) (per curiam) ("[T]he lower court had rightfully considered the violent and dangerous nature of the crimes committed, as well as the pre-sentence report which included information concerning the defendant's juvenile larceny charge, a history of substance abuse, and a dishonorable discharge from the Navy."); Wayt v. State, 912 P.2d 1106, 1109 (Wyo. 1996) ("A defendant's juvenile record and his adult record, including dismissed charges, are important clues to his character and are worthy of consideration for sentencing purposes.").

As the foregoing indicates, states vary tremendously in the degree to which they permit a prior juvenile adjudication to impact sentencing following a subsequent adult conviction. The vast majority of states—at least forty-two by our count—allow a trial court to consider prior juvenile adjudications in fashioning a sentence. And in more than a third of states, prior juvenile adjudications increase the statutory penalties available for an adult defendant in a subsequent case in certain instances.

Although there is no consensus regarding whether prior juvenile adjudications may be considered at sentencing following an adult conviction, the question is

significantly closer if we frame the issue as whether a juvenile adjudication may be used to increase a statutory sentencing range following an adult conviction. See generally Apprendi v. New Jersey, 530 U.S. 466, 481 (2000) (distinguishing between factors that a judge may consider "in imposing sentence within statutory limits in the individual case" and those that alter the statutory range (emphasis omitted)). As the Court noted in Kennedy v. Louisiana, 554 U.S. 407 (2008), it has found a national consensus against execution of the mentally ill and one against execution of juvenile offenders based in part on the fact that thirty states barred each practice. Id. at 425 (citing Atkins v. Virginia, 536 U.S. 304, 313-15 (2002), and Roper v. Simmons, 543 U.S. 551, 564 (2005)). These numbers are quite similar to those uncovered by our research: including those that are silent on the issue, it appears that thirty-one states do not enhance statutory sentencing ranges based on prior juvenile adjudications.

However, the Atkins Court relied "not so much the number of these States" but upon "the consistency of the direction of change." 536 U.S. at 315. Between 1990 and 2001, the Court noted, sixteen states prohibited the execution of the mentally ill while no state moved in the opposite direction. Id. at 314-15. The Court further relied on the fact that execution of the mentally retarded was exceedingly rare in states that permitted the practice; only five states had executed such defendants in recent years. Id. at 316. Similarly, in Roper, the Court noted that only six states had executed a juvenile offender since 1989, and only three since 1995. 543 U.S. at 564-65. And the Court relied on "significant" change in the number of states permitting the practice: "The number of

-15-

States that have abandoned capital punishment for juvenile offenders . . . is smaller than the number of States that abandoned capital punishment for the mentally retarded . . . yet we think the same consistency of direction of change has been demonstrated." Id. at 566. The Court adopted a similar line of analysis in Graham, in which it concluded a national consensus counseled against the imposition of life without parole sentences on juvenile offenders despite the fact that thirty-seven states permitted the practice. Noting that "[a]ctual sentencing practices are an important part of the Court's inquiry into consensus," Graham, 130 S. Ct. at 2023 (citation omitted), the Court relied on the infrequency with which such sentences were actually imposed, id. at 2024 (only 123 such sentences were being served nationwide, with a majority imposed by a single state).

Orona does not offer any evidence regarding the frequency with which juvenile adjudications are used to enhance subsequent adult sentences, although it is his burden to establish that a national consensus exists. See Stanford v. Kentucky, 492 U.S. 361, 373 (1989) overruled on other grounds by Roper, 543 U.S. at 574. Unable to conclude that a national consensus exists on the matter, and given our determination that approximately two-thirds of states do not appear to use juvenile adjudications to increase the statutorily available sentencing ranges for subsequent adult convicts, we will proceed to the second prong of the categorical analysis.

**B**

"Community consensus, while entitled to great weight, is not itself determinative of whether a punishment is cruel and unusual." Graham, 130 S. Ct. at 2026 (quotation

omitted). Instead, courts must apply their independent judgment in interpreting the Eighth Amendment. Id. In doing so, we must consider "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question" and "whether the challenged sentencing practice serves legitimate penological goals." Id.

Orona argues that the practice of using a juvenile adjudication as a predicate offense under ACCA conflicts with the Supreme Court's holdings regarding juvenile offenders in Roper and Graham. In the former case, the Court concluded that the imposition of the death penalty upon juvenile offenders violates the Eighth Amendment. Roper, 543 U.S. at 560. It reached this conclusion based in large part on the differences between juveniles and adults. Juveniles, the Court held, have "a lack of maturity and an underdeveloped sense of responsibility." Id. at 569 (alteration and quotation omitted). They "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." Id. And the "personality traits of juveniles are more transitory, less fixed." Id. at 570. These differences "render suspect any conclusion that a juvenile falls among the worst offenders." Id. Juvenile offenders must be considered less culpable because they "have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment," and "a greater possibility exists that a minor's character deficiencies will be reformed." Id. The Graham Court extended this logic, prohibiting the imposition of mandatory life without parole sentences for non-homicide juvenile offenders. 130 S. Ct. at 2034. This holding was again based on the

-17-

"fundamental differences between juvenile and adult minds." Id. at 2026. And in Miller, the Court held that mandatory life without parole sentences for juveniles are entirely impermissible for the same reasons. 132 S. Ct. at 2464.

Orona argues that the use of a juvenile adjudication as a predicate offense under ACCA similarly violates the Eighth Amendment because juveniles are less morally culpable. The problem with this line of argument is that it assumes Orona is being punished in part for conduct he committed as a juvenile. This assumption is unfounded. The Supreme Court "consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant." Nichols v. United States, 511 U.S. 738, 747 (1994) (quotation omitted). "When a defendant is given a higher sentence under a recidivism statute . . . 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's status as a recidivist." United States v. Rodriquez, 553 U.S. 377, 386 (2008) (quotation omitted).

Unlike the defendants in Roper and Graham, Orona is being punished for his adult conduct. As we recently explained in rejecting a substantive due process challenge to ACCA's use of juvenile adjudications, the cases upon which Orona relies "involve sentences imposed directly for crimes committed while the defendants were young. In the case before us, an adult defendant faced an enhanced sentence for a crime he committed as an adult." United States v. Rich, 708 F.3d 1135, 1140 (10th Cir. 2013). A juvenile's lack of maturity and susceptibility to negative influences, see Roper, 543 U.S. at 569, cannot explain away Orona's decision to illegally possess a firearm when he was

-18-

twenty-eight years old. And the third factor identified by the Court as differentiating juvenile and adult offenders, the greater likelihood "that a minor's character deficiencies will be reformed," id. at 570, cuts against Orona's argument. Unlike defendants who receive severe penalties for juvenile offenses and are thus denied "a chance to demonstrate growth and maturity," Graham, 130 S. Ct. at 2029, ACCA recidivists have been given an opportunity to demonstrate rehabilitation, but have elected to continue a course of illegal conduct, see Rich, 708 F.3d at 1141 ("[A]dults facing enhanced sentences based, only in part, on acts committed as juveniles have had the opportunity to better understand those consequences but have chosen instead to continue to offend.").

In United States v. Banks, 679 F.3d 505 (6th Cir. 2012), the Sixth Circuit reached a similar conclusion in holding that a conviction committed by a juvenile who is tried as an adult could be used under ACCA consistent with the Eighth Amendment. It distinguished Graham's culpability rationale, noting that the defendant, "33 years old at the time of his felon-in-possession offense, remained fully culpable as an adult for his violation and fully capable of appreciating that his earlier criminal history could enhance his punishment." Id. at 508. The Eighth Circuit has applied the same reasoning. See United States v. Scott, 610 F.3d 1009, 1018 (8th Cir. 2010) ("Scott was twenty-five years old at the time he committed the conspiracy offense in this case. . . . The Court in Graham did not call into question the constitutionality of using prior convictions, juvenile or otherwise, to enhance the sentence of a convicted adult."). And several pre-Graham cases rejected the argument that juvenile conduct should not be counted as an ACCA

-19-

predicate offense. See United States v. Salahuddin, 509 F.3d 858, 864 (7th Cir. 2007) ("[T]he Eighth Amendment does not prohibit using a conviction based on juvenile conduct to increase a sentence under the armed career criminal provisions."); United States v. Wilks, 464 F.3d 1240, 1243 (11th Cir. 2006) (reaching the same conclusion).

Orona also argues that the use of juvenile adjudications under ACCA does not serve "legitimate penological goals." Graham, 130 S. Ct. at 2026. We disagree. The Court has repeatedly held that retribution and incapacitation are legitimate penological goals. See, e.g., id. at 2028. Both are served by ACCA. The government "is justified in punishing a recidivist more severely than it punishes a first offender." Solem v. Helm, 463 U.S. 277, 296 (1983). This is because "an offense committed by a repeat offender is often thought to reflect greater culpability and thus to merit greater punishment." Rodriquez, 553 U.S. at 385; see also Ewing v. California, 538 U.S. 11, 29 (2003) ("In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions.").

ACCA's consideration of juvenile adjudications also serves the government's interest in incapacitating recidivist offenders who possess firearms illegally. "[A] second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation." Rodriquez, 553 U.S. at 385; see also United States v. Angelos, 433 F.3d

738, 751 (10th Cir. 2006) ("[T]he lengthy sentences mandated by § 924(c) were intended by Congress to (a) protect society by incapacitating those criminals who demonstrate a willingness to repeatedly engage in serious felonies while in possession of firearms.").

Orona argues that a Guidelines sentence of 92-115 months, which would apply absent ACCA's fifteen-year mandatory minimum, would be sufficient to meet these penological goals. But our review of Congress' decision as to the adequacy of punishment is quite circumscribed. "[I]f the punishment has some connection to a valid penological goal," the question is whether "the punishment is . . . grossly disproportionate in light of the justification offered." Graham, 130 S. Ct. at 2029. "[T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." Rummel v. Estelle, 445 U.S. 263, 285 (1980).

Orona has not shown that ACCA's statutory minimum, which is approximately five years longer than his already lengthy advisory Guidelines range, is grossly disproportionate. ACCA addresses the very serious danger of recidivist felons in possession of firearms. See Angelos, 433 F.3d at 751 (affirming a fifty-five-year sentence under § 924(c) despite Eighth Amendment challenge based in part on the need to "protect society by incapacitating those criminals who demonstrate a willingness to repeatedly engage in serious felonies while in possession of firearms"). By enacting ACCA, Congress intended to "infuse federal law enforcement into efforts at curbing and

-21-

'incapacitating' 'armed, habitual (career) criminals.' Only persons who are illegally in possession of a firearm and who have been convicted previously of three violent felonies or serious drug offenses are subject to its minimum fifteen-year sentence." United States v. Gilliard, 847 F.2d 21, 26 (1st Cir. 1988) (quoting H.R. Rep. No. 1073, at 2 (1984), reprinted in 1984 U.S.C.C.A.N. 3661, 3662)). Other circuits have held that mandatory ACCA sentences are not grossly disproportionate to the offense of being a felon in possession of a firearm. See, e.g., United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995) ("[A] fifteen-year sentence under ACCA is neither disproportionate to the offense nor cruel and unusual punishment, and thus does not violate the Eighth Amendment."); United States v. Johnson, 22 F.3d 674, 683 (6th Cir. 1994) ("Under the totality of the circumstances, the fifteen-year sentence does not constitute cruel and unusual punishment."). Having rejected Orona's argument that he is less culpable for his present offense based on the juvenile predicate offense, we see no reason to depart from that view with respect to Orona's specific Eighth Amendment challenge.[4] We accordingly hold

---

[4] Orona also argues that juvenile adjudications are less reliable because they do not include the right to a jury under the Fourteenth Amendment. See McKeiver v. Pennsylvania, 403 U.S. 528, 545 (1971) (plurality opinion). This argument seems to raise due process rather than Eighth Amendment concerns. However, Orona cannot rely on the rule announced in McKeiver because his juvenile adjudication occurred in New Mexico, where juveniles have the right to a jury under the state constitution. See Peyton v. Nord, 437 P.2d 716, 725 (N.M. 1968) (per curiam) ("A juvenile charged with violation of a state law, as therein provided, is entitled to a trial by jury in juvenile court . . . if the offense was one which would be triable by jury if committed by an adult."); see also State v. Eric M., 925 P.2d 1198, 1200 (N.M. 1996) ("We confirm the holding of [a prior case] that a child has a constitutional right to a trial by jury and is to be accorded that

Continued . . .

that the use of Orona's juvenile adjudication as a predicate offense for ACCA purposes does not violate the Eighth Amendment's ban on cruel and unusual punishment.

**III**

In addition to his Eighth Amendment claim, Orona contends that the residual clause of ACCA is unconstitutionally vague. We review whether a statute is unconstitutionally vague de novo. United States v. Michel, 446 F.3d 1122, 1135 (10th Cir. 2006). "The void-for-vagueness doctrine provides that a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Id. (quotation omitted).

ACCA defines "violent felony" as including any crime that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B). In Begay v. United States, 553 U.S. 137 (2008), the Supreme Court held that felony driving under the influence did not qualify because it was not "roughly similar, in kind as well as in degree of risk posed" to the listed examples. Id. at 143-44. In particular, the Court noted that the "listed crimes all typically involve purposeful, violent, and aggressive conduct." Id.

right absent a waiver." (quotation omitted)). "As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." Cnty. Court of Ulster Cnty. v. Allen, 442 U.S. 140, 155 (1979). Because Orona had the right to a jury trial in his juvenile adjudication, we need not consider the hypothetical defendant who lacked such a right.

at 144 (quotation omitted). "[U]nlike the example crimes, the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate." Id. at 145.

Just a few years later, the Court held that the crime of fleeing from a law enforcement officer qualified as a predicate offense under ACCA. See Sykes v. United States, 131 S. Ct. 2267 (2011). The Court rejected the defendant's argument, based largely on Begay, that "ACCA predicates [must] be purposeful, violent, and aggressive in ways that vehicle flight is not." 131 S. Ct. at 2275. "Begay involved a crime akin to strict liability, negligence, and recklessness crimes," the Court explained, "and the purposeful, violent, and aggressive formulation was used in that case to explain the result." Id. at 2276. The Court dismissed the importance of the "purposeful, violent, and aggressive" language that appeared dispositive in Begay, noting that the phrase "has no precise textual link to the residual clause." Id. at 2275. Instead, the Court held that the crime at issue qualified because it was "not a strict liability, negligence, or recklessness crime" and was "similar in risk to the listed crimes." Id. at 2276.

Orona argues that the Court's shifting jurisprudence on the proper test used to determine whether a crime qualifies under the residual clause renders the statute impermissibly vague. In James v. United States, 550 U.S. 192 (2007), Justice Scalia argued in dissent that ACCA's residual clause was incomprehensible based on the manner in which the Court had interpreted it. Id. at 214 (Scalia, J., dissenting). The majority rejected this conclusion:

-24-

> While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his amici—that the residual provision is unconstitutionally vague. The statutory requirement that an unenumerated crime "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another" is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits. Similar formulations have been used in other federal and state criminal statutes.

Id. at 210 n.6 (citations omitted). Although this statement was dicta, "we are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007) (quotation omitted).

Further, the Court reiterated in Sykes that the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law." 131 S. Ct. at 2277 (quotation omitted). And in 2011, Justice Scalia dissented from the denial of certiorari on this specific issue. See Derby v. United States, 131 S. Ct. 2858 (Scalia, J., dissenting from the denial of certiorari). Several circuit courts have held the residual clause is not unconstitutionally vague. See United States v. Cowan, 696 F.3d 706, 708 (8th Cir. 2012); United States v. Jones, 689 F.3d 696, 704 (7th Cir. 2012); United States v. Hudson, 673 F.3d 263, 268-69 (4th Cir. 2012). Orona does not direct us to any opinion holding the opposite.

Although we have previously noted that "[t]he Supreme Court's holding in Sykes is not a model of clarity," United States v. Sandoval, 696 F.3d 1011, 1017 n.8 (10th Cir. 2012), we have nevertheless distilled a comprehensible test from the Court's residual

clause cases: "[A]fter Sykes, it is not necessary to reach <u>Begay</u>'s purposeful inquiry when the mens rea of the offense requires intentional conduct. In such cases, we ask instead whether the crime is similar in risk to the listed crimes in the ACCA." <u>United States v. Maldonado</u>, 696 F.3d 1095, 1103 (10th Cir. 2012) (quotations, citation, and alteration omitted). We are persuaded by the Court's consistent rejection of Orona's vagueness argument and the unanimous conclusion of our sibling circuits, and hold that the residual clause is not impermissibly vague.

**IV**

For the foregoing reasons, Orona's conviction and sentence are **AFFIRMED**.